ELIZA W. WHITE et al., Respondents, *v.* ANNA BYRON BENJAMIN and CYRUS V. KEAN, as Assignee of EDWARD M. BENJAMIN, for the Benefit of Creditors, Appellants, Impleaded with EDWARD M. BENJAMIN et al.

1. FINDINGS OF FACT — REVIEW BY COURT OF APPEALS. Where there is any evidence to support them, findings of fact by the trial court, affirmed by the General Term, cannot be reviewed by the Court of Appeals.

2. EVIDENCE — BOOKS OF ACCOUNT — CREDITOR'S ACTION. Books of account, kept by a judgment debtor in his business, may be introduced in evidence by a judgment creditor to support an attack in equity upon the transfer of property by the judgment debtor to a third person claiming a valid debt as the consideration of the transfer.

3. EVIDENCE — OMISSIONS FROM BOOKS OF ACCOUNT — CREDITOR'S ACTION. Where, in a judgment creditor's action to set aside as fraudulent and void transfers of property made by the judgment debtor to his wife, a statement is introduced by the defendants containing entries of alleged dealings between the debtor and his wife and tending to show a a valid debt due her as a consideration for the transfer, books of account kept by the debtor in the ordinary course of his business while he was

still the owner of the property subsequently transferred in consideration of the alleged indebtedness and which fail to show such indebtedness, are competent evidence on the part of the plaintiff as tending to show by the absence of entries required by commercial usage, as well as by the presence of entries relating to the transactions between him and his wife, that the statement was largely fictitious and fraudulently manufactured.

4. DISCRETIONARY ORDERS — REVIEW BY COURT OF APPEALS. An order of the General Term affirming an order of the Special Term denying a motion for a new trial on the ground of newly-discovered evidence merely, is an order resting in discretion and not reviewable by the Court of Appeals.

*White* v. *Benjamin*, 8 Misc. Rep. 684, affirmed.

*White* v. *Benjamin*, 15 Misc. Rep. 26, appeal dismissed.

(Argued June 12, 1896; decided October 13, 1896.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York, entered upon an order made May 10, 1894, which affirmed a judgment in favor of plaintiffs entered upon a decision of the court on trial at Special Term.

Also, appeal from an order of said General Term, made December 18, 1895, which affirmed an order of Special Term denying a motion for a new trial on the ground of newly-discovered evidence.

This action was brought by judgment creditors to set aside as fraudulent and void a general assignment for the benefit of creditors, executed by the defendant Edward M. Benjamin to the defendant Cyrus V. Kean; also, a judgment entered against him in favor of his wife, and certain transfers of real estate made by him.

On the twenty-first of April, 1892, the plaintiffs recovered a judgment against the defendant Edward M. Benjamin for the sum of $121,342.01 upon a debt which originated in January, 1884. The action resulting in such judgment was commenced in December, 1889, and the issue of usury, joined by an answer served by Mr. Benjamin, was tried in October, 1891, but, as exceptions were ordered to be heard in the first instance at the General Term, judgment was not directed upon the verdict in favor of the plaintiffs until April 11th, 1892, when the exceptions were overruled. In the meantime Anna B., wife of the said Edward M. Benjamin, had com-

menced a friendly action against him to recover the sum of
$114,380.67, besides interest, upon a note for that amount,
dated December 31st, 1887, the summons having been served
on May 6th, 1890, and although no answer was interposed, the
affidavit of service was not made nor judgment entered until
April 19th, 1892, or two days before the recovery by the
plaintiffs of their judgment. The time that elapsed between
the decision of the General Term and the entry of judgment
in favor of Mrs. Benjamin was spent in negotiations between
the plaintiffs and Mr. Benjamin through their respective
attorneys. On the same day that Mrs. Benjamin recovered
her judgment, but after the roll was filed, execution issued
and levy made, Mr. Benjamin made a general assignment,
which was not filed until the next day. The schedule of lia-
bilities filed by the assignee contained the name of Mrs. Ben-
jamin as a creditor for the amount of her judgment, or
$143,299.12, as well as for the additional sum of $24,566.16,
making $167,865.28 in all.

On the 10th of July, 1886, Mr. Benjamin executed a con-
veyance to his present wife, then Miss Byron, of premises
worth $16,000 above incumbrances, but the consideration
recited was one dollar, and the deed was not delivered until
October, 1891, nor recorded until April 20th, 1892. At the
same time he also conveyed to Miss Byron other lands in
which he had a life interest through the will of his first wife,
who died in May, 1886. She was a sister of Miss Bryon, who
became Mrs. Benjamin in October, 1889. The deed last
named recited a consideration of $15,000, no part of which
was ever paid, and it was recorded on the 14th day of Novem-
ber, 1889. On the sixth of January, 1890, Mr. Benjamin
conveyed to the same grantee, through an intermediary, other
lands in which he had a life interest. On the 17th of Octo-
ber, 1891, he conveyed to her two parcels of land in the state
of New Jersey, worth $8,000, subject to a mortgage for
$3,500, which he afterwards paid. The deeds each recited a
consideration of one dollar, and neither of them had been
recorded when this action was tried. All of the property

conveyed by the several deeds above mentioned, with one exception, remained in the possession of Mr. Benjamin at the time of his general assignment, and he continued to lease and insure the same in his own name and to receive the rents thereof. Although it is claimed that these deeds were collateral only, still the rents from the lands conveyed were charged to him, and thus increased his apparent indebtedness to his wife. On November 22nd, 1890, he received $5,084 on a policy of life insurance, in which his wife had no interest, and transferred the same to her without entering it upon his books, or otherwise charging it to her. At the time of the assignment he had on deposit in bank the sum of $1,363.13, which he drew out on the day the assignment was made, and deposited it in a new account in his name as attorney, and on the next day he transferred the same to his wife's account in the same bank, but did not charge it to her, or report it to the assignee. He made the same disposition of $110 paid to him for rent, July 19th, 1892, without charging or reporting the same in any way.

The trial court found, in addition to the foregoing facts, that, since 1863, Mr. Benjamin had been the attorney in fact for his wife, both before and after his marriage to her, acting under a written power of attorney, and having full charge of all her business affairs. She was aware of his litigation with the plaintiffs, and knew of his defeat at Circuit and General Term, and that he proposed to make a general assigment if he could not effect a settlement with them. The entry of her judgment was under his control, and it was finally entered upon his procurement and with the intent on the part of both himself and wife that it should be at once followed by a general assignment. From the year 1885 he was continuously insolvent. He was a silk merchant and kept books in the usual way. Upon his ledger for 1869 an account appears with Anna Byron, now Mrs. Benjamin, which opens with a charge against her of $1,137.75, upon which she was charged with interest from time to time, as the account continued. Her claim against him was represented upon the trial by a statement

known as "Exhibit 8," which was prepared by him, consisting of many separate sheets of paper pasted together, and according to that statement at the time that his regular books, kept in his business, showed that she was indebted to him in the sum of $1,337.75, he was indebted to her in the sum of $13,499.95. The account against him on the books was closed on the 16th of April, 1892, when the sum of $12,198.20, being the balance then appearing in her favor, was paid to her. He owed her nothing on April 19th, 1892, according to his books, which contained no entry of any note given by him to her at any time. The statement, however, showed that on December 31st, 1887, he credited himself with $114,380.67 on account of his promissory note that day given to her, payable in thirty days, and that he carried forward to the year 1888 a balance against himself of $28,277.04. The note last named was the one upon which she subsequently recovered her judgment of $143,299.12, and it was claimed on the trial that the whole amount of the note had gone into his business. But few of the entries in the statement appear upon the books, and some of those upon the books do not appear in the statement. Although there was no agreement between Benjamin and his wife that interest on the claim should be compounded, the total amount of compound interest included in said statement was $22,195, and at the date of said note it amounted to $17,200.96, of which $13,792.06 was actually included in the note. Neither said sum of $5,084, the proceeds of the policy of life insurance, nor the sum of $1,363.13 drawn from the bank, appear upon said statement, and no part of either was paid over to the assignee. Other items shown to have been paid by him to his wife at different times were never charged to her in any way, nor credited to him. In December, 1891, he represented to a commercial agency that he was solvent, and also wrote to one of his foreign consignors that he could pay any judgment that these plaintiffs might recover against him without inconvenience, yet if the statement was true he had been insolvent for many years. Mrs. Benjamin, in her proof of claim filed with the assignee in December, 1892, set

forth her debt according to the statement, and swore that nothing had been paid to her on account thereof.

The trial court found that said statement of account was fraudulently manufactured by Mr. Benjamin in order to make it appear that he owed a large sum to his wife, and that he included compound interest for the purpose of swelling his apparent indebtedness to her. It was found, both as fact and law, that her judgment against him, his conveyances to her, so far as the court had jurisdiction thereof, and the general assignment, were fraudulent and void as against the plaintiffs, and judgment was directed that the same be set aside as to them and the property sequestered and administered by a receiver in the usual way. Judgment having been entered accordingly, the same was affirmed on appeal by the General Term. Thereafter a motion for a new trial upon newly-discovered evidence was denied by the court at Special Term and on appeal to the General Term the order was affirmed.

From said judgment and order of affirmance these appeals are taken.

*John E. Parsons* and *J. Hampden Dougherty* for appellants. Mr. Benjamin's books were not competent evidence. The entry in the account headed " Anna Byron," under date of December 31, 1868, " to balance, $1,137.75," was incompetent. It was certainly incompetent evidence by which to prove that there was not due by Mr. Benjamin to her at that time the balance of $13,449.95 in her favor, as shown upon the account between Mr. Benjamin and herself. (*Smith* v. *Rentz*, 131 N. Y. 169 ; *Loos* v. *Wilkinson*, 110 N. Y. 195 ; *Tousley* v. *Barry*, 16 N. Y. 497; *Foster* v. *Beals*, 21 N. Y. 247; *Booth* v. *Swezey*, 8 N. Y. 278; *Earl* v. *Clute*, 2 Abb. Ct. App. Dec. 1; *Paige* v. *Cagwin*, 7 Hill, 361 ; *Whitaker* v. *Brown*, 8 Wend. 490; *Smith* v. *Webb*, 1 Barb. 231.) Where evidence is discovered which shows that an injustice has been done, the right to a new trial is a substantial right. (*Clegg* v. *N. Y. Newspaper Union*, 51 Hun, 232; *Platt* v. *Munroe*, 34 Barb. 291; *Tyler* v. *Hoornbeck*, 48 Barb. 197 ;

*Wilcox S. P. Co.* v. *Barclay*, 48 Hun, 54; *Bulkin* v. *Ehret*, 29 Abb. [N. C.] 62; Code Civ. Proc. § 190, subd. 2.)

*Alexander B. Simonds* and *William C. Beecher* for respondents. Questions of fact will not be determined by this court, unless a finding is unsupported by any evidence. (Code Civ. Proc. § 1337; *Crim* v. *Starkweather*, 136 N. Y. 635.) The books of account kept by Mr. Benjamin were competent evidence to prove the falsity of the statement of his alleged debt to his wife. (*Loos* v. *Wilkinson*, 10 N. Y. S. R. 103; 110 N. Y. 195; *Williams* v. *Williams*, 142 N. Y. 159.) The order appealed from was discretionary with the court below and is not appealable to this court. (*Tracey* v. *Altmyer*, 46 N. Y. 598; *Donley* v. *Graham*, 48 N. Y. 658; *Scoville* v. *Landon*, 50 N. Y. 686; *Dalrymple* v. *Hannum*, 54 N. Y. 654; *Meltzer* v. *Doll*, 91 N. Y. 373; *Smith* v. *Platt*, 96 N. Y. 635; *Reilley* v. *D. & H. C. Co.*, 102 N. Y. 386.)

VANN, J. The most serious question that arose in this case was the question of fact in relation to the fraud alleged to have been perpetrated by the judgment debtor and his wife against the creditors of the former. A careful examination of the record has convinced us that the affirmance by the General Term of the facts found by the trial court has placed that question beyond our reach, for it cannot be seriously contended that there is no evidence to support the findings of fact. (*Crim* v. *Starkweather*, 136 N. Y. 635.) The only question requiring the expression of consideration is whether a portion of the books of Mr. Benjamin was competent evidence for the plaintiffs as against Mrs. Benjamin and the assignee, both of whom objected to the same as incompetent, and each separately excepted when the objection was overruled. The question arose in this way : Mr. Benjamin, who by his answer had put at issue all charges of fraud, was called by the plaintiffs as a witness and examined by both sides at great length, and during his examination a paper marked " Exhibit 8 " was produced and put in evidence. This paper purported to be

a statement of the dealings between Mr. Benjamin and his wife, commencing October 3d, 1863, and ending April 18th, 1892. It occupied fifty printed pages of the appeal book, and he testified that it consisted of original entries from the year 1880 onward, and that the entries prior to that date were copied from another paper of original entries that had not been preserved. It supported the theory of the defendants as to the amount of Mrs. Benjamin's claim against her husband and tended to show that he was indebted to her, not only to the full amount of the note and judgment, but also in a large balance besides. As the issue of fraud depended mainly upon the honesty of her claim, it became important to thoroughly test this statement and see if it was reliable. For this purpose, among others, the books of Mr. Benjamin, kept in due form according to commercial usage, were put in evidence by the plaintiffs, so far as they contained entries relating to his transactions with his wife. They tended to show that said statement, Exhibit 8, was largely fictitious, and that it was fraudulently manufactured by him to use as evidence in her favor for the purpose of proving that he owed her a much larger amount than was the fact. Mrs. Benjamin and the assignee contend that it was error to admit this evidence for any purpose, and especially for the purpose of impeaching her claim, because it did not appear upon the books.

Courts scrutinize with the utmost care business transactions between husband and wife alleged to be fraudulent as against creditors, because fraud is so easily practiced and concealed under cover of the marriage relation. Fraud is one of the broadest issues known to the law, for it can seldom be proved by direct evidence, but is dependent upon circumstances which, separately considered, may be quite immaterial, but when combined are not only material but have great persuasive force. (1 Wheaton's Ev. § 33.) The facts in an issue of commercial fraud are frequently drawn with difficulty from hostile witnesses, whose effort is to conceal as much and reveal as little of the truth as their conscience and skill will permit. When the witness is a party his testimony may be rebutted by other

evidence introduced by the party in whose behalf he was called. (Code Civ. Pro. § 838.) Upon the trial of an issue, such as that now under review, much latitude has been allowed in modern times, not only as to the method of examination, but also as to the substance of the evidence itself. (Bump Fraud. Conv. 579; Story Eq. Jur. § 190.) In determining whether a given transaction was fraudulent, courts carefully look at the ordinary transactions of the person charged with fraud, and especially at such entries upon his books, bearing upon the subject in hand, as were made at a time when he could have had no object in manufacturing evidence. Accurate bookkeeping should present a complete history of a man's business affairs, and the entries made in the ordinary course of his business are regarded as acts and not as mere declarations. While they are not received in an ordinary action at law to recover a debt, except under peculiar circumstances, or as against the party who kept the books, in an action in equity, and especially upon the trial of what are known as "creditors' actions," they are admitted not only against the judgment debtor, whose transactions they are supposed to record, but also against those deriving title to property from him, as to such entries as were made while such property was still in his possession. The absence of entries required by commercial usage, especially when transactions with other parties, similar to those in question with the parties before the court, are duly entered, is regarded as a competent fact, whenever the entries themselves, if duly made, would have been competent. Although the books are not competent as against a creditor seeking to recover a judgment for his debt, they may be introduced by a judgment creditor to support an attack in equity upon the transfer of property by the judgment debtor to a third person, claiming a valid debt as the consideration for the transfer. Entries made in the ordinary course of business, while the debt in dispute was in process of contraction, are competent as to another creditor, for the purpose of showing that there was no such debt, or that it was materially less than the amount claimed. While such

evidence is not conclusive, it has a bearing upon the question of the intent and good faith of the judgment debtor, as it shows how he acted or failed to act with reference to a principal fact.   If the transfer attacked is defended as a preference given in consideration of a precedent debt, and it appears that the debtor in the common course of business did not regard or treat the alleged debt as genuine, it bears upon his honesty in making the transfer.   Any evidence tending to establish that fact would be competent, not only as against himself, but also as against those standing in his shoes, for the motives of both parties to the acts effecting the preference are open to inquiry. Unless both acted in good faith, the preference, under ordinary circumstances, cannot stand.   The good faith of the debtor, therefore, is an important element in the title of the person accepting the preference.   If his acts, such as the deliberate record made in his own books, show that he thought there was no such debt, or that it was materially less than was subsequently claimed, they may be received upon the question of fraudulent intent.   Where, as in this case, the most intimate relation of life existed between the alleged debtor and creditor, and the former did all the business for both, and was in fact the commercial *alter ego* of the latter, the entries are of peculiar significance, because made by the one who represented both contracting parties and who alone knew all about every transaction.   When there is no sign of unfriendly feelings between the alleged debtor and creditor, and no reason to believe that the books were unfairly kept, the entries are entitled to great weight, for they are the contemporaneous record of deeds done, made by one who knew the facts and had no motive to set down or omit anything to injure the creditor.   This was held, in substance, in the late case of *Loos* v. *Wilkinson* (110 N. Y. 195), where the facts in many respects so strongly resemble those now before us as to make the following extract from the opinion directly applicable to the case in hand : " It was a matter much litigated upon the trial whether the bond was ever a subsisting obligation, and if it was, whether there was anything due thereon at the date of

the deed. Wilkinson & Co. kept books of account, as bankers, in which their financial transactions were entered. Upon the trial 'the plaintiffs were permitted to show, against the objection of the defendants, that those books did not contain any entry of indebtedness from them * * * upon the bond mentioned. * * * It is undoubtedly true that if this were a controversy between John (the alleged creditor), and his brothers, the latter could not introduce their books for the purpose of showing that the bond was without consideration or that it had been paid. (*Carroll* v. *Deimel*, 95 N. Y. 252.) But this is not a controversy between John and his brothers, and the latter are not seeking to maintain that their own books are evidence in their favor. The controversy is between the creditors and the three brothers, and the plaintiffs seek to establish fraud in the execution of the deed, mortgage and assignment against the three. There can be no suspicion that the books were manipulated for the purpose of cheating or taking any advantage of John. They were kept in the regular course of a large business, and the entries were made from day to day as transactions occurred. The defendants alleged that the consideration of the deed was an indebtedness from them to John, and it was competent for the plaintiffs to show, if they could, that no written obligation of any kind for the debt existed; and if John kept books of account, that there was no charge of the debt in his books; and if the debtors kept regular books in which were entered their debts and credits, that there was no entry of the debt upon their books. * * * What appeared and what did not appear upon the books were not in the nature of mere declarations of the grantors, but they were in the nature of acts and conduct pertinent to the inquiry." (P. 212.)

We think that the evidence in question was competent because it tended to show acts of the debtor, done in the ordinary course of his business, while he was still the owner of the property subsequently transferred in consideration of the alleged indebtedness. As we find no error in the record upon the appeal from the judgment, the latter should be affirmed,

but the appeal from the order should be dismissed, because "the decisions of one court resting in discretion are not reviewable in another unless such review is especially authorized by law." (*Reilley* v. *President, etc., D. & H. C. Co.,* 102 N.Y. 383, 386; *Smith* v. *Platt,* 96 N. Y. 635, 636; *Dalrymple* v. *Hannum,* 54 N. Y. 654; *Baker* v. *Remington,* 45 N. Y. 323.)

The judgment should be affirmed and the appeal from the order dismissed, with costs upon each appeal.

All concur.

Judgment accordingly.