THE CHASE NATIONAL BANK OF THE CITY OF NEW YORK, Appellant, *v.* UNITED STATES TRUST COMPANY OF NEW YORK and Others, as Trustees under a Deed of Trust Made by HARRIS SOKOLSKI, Dated December 19, 1930, and HARRIS SOKOLSKI, Respondents.

First Department, October 28, 1932.

*Timothy Newell Pfeiffer* of counsel [*Schuyler William Livingston* with him on the brief; *Milbank, Tweed, Hope & Webb*, attorneys], for the appellant.

*Terence J. McManus* of counsel [*Hugo I. Epstein, Harry K. Davenport* and *Edward A. McInnes* with him on the brief; *William F. Carell*, attorney], for the respondents Birdie F. Cohen, William Kerner, Jacob Dorf and Harris Sokolski; *Stewart & Shearer*, attorneys for the respondent United States Trust Company of New York.

SHERMAN, J. On December 19, 1930, Harris Sokolski, then about eighty years of age, conveyed to defendant trust company property valued at approximately $1,667,650, in trust, the income to be paid to his wife for life with remainder to various of his relatives and to certain charitable institutions.

At that time plaintiff held two promissory notes for $61,500 and $58,500, made by Fifth Avenue & 28th Street Realty Co., Inc., and indorsed by Mr. Sokolski. The first named note was payable

December 26, 1930, and, when later reduced by a payment of $2,500 to $59,000, was renewed in that sum, indorsed by Mr. Sokolski, and became payable on April 26, 1931. The other note matured January 2, 1931, and having been reduced by a payment of $2,500 at maturity, was renewed upon Sokolski's indorsement in the sum of $56,000 payable May 2, 1931. Plaintiff also held a note for $30,500 payable January 12, 1931, and a note for $5,000 payable February 14, 1931, both made by the same realty company and indorsed by Mr. Sokolski. The total of these notes, on December 19, 1930, was $155,500 with interest. No part thereof has ever been paid, except the two amounts of $2,500 above mentioned and payments in the total sum of $9,659.46 in reduction of the note for $30,500. Judgments were subsequently entered upon this indebtedness in favor of plaintiff against Sokolski and the realty company which remain unsatisfied.

Plaintiff brings this action asserting that the transfer to defendant trust company by Sokolski, which was concededly without consideration, rendered him on December 19, 1930, insolvent within the meaning of section 271 of the Debtor and Creditor Law and must accordingly be set aside under section 273 of that enactment.

The important applicable parts of the statute relied on by appellant are:

" § 273. Conveyances by insolvent. Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration."

" § 271. Insolvency. 1. A person is insolvent when the present fair salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured."

The result to be reached and given effect in this suit depends upon whether or not the fair salable value of Sokolski's assets remaining after the conveyance was less than his probable liability on his existing debts, as they matured.

In addition to the sum of $155,500, upon which Mr. Sokolski was obligated to plaintiff on that date, he had either by indorsement of notes or by written guaranty made himself liable for further debts of the same realty company, viz., to the National City Bank in the sum of $162,000; to Norbek, Inc., in the sum of $36,000; to the holder of the second mortgage upon the parcel of realty which was owned by that realty corporation, in the sum of $339,000; and to the mortgagee named in a third mortgage upon

the same real estate in the further sum of $165,000. The total of these engagements to plaintiff and others was $857,500.

These obligations carried early maturities. The first note for $33,000 held by the National City Bank matured on January 2, 1931, and the last one on March 21, 1931. The first of the notes held by the Norbek, Inc. (ten in number) each for $3,600, matured on January 8, 1931, and the remaining notes were payable monthly thereafter, with acceleration provisions maturing all unpaid notes upon the dishonor of any one.

The principal of the second mortgage for $339,000 was due on February 1, 1931. It was held by the Bank of United States which had a few days theretofore closed its doors and whose assets were then in the possession of the Superintendent of Banks.

The third mortgage, in the sum of $165,000, which had fallen due on October 10, 1930, had been extended to January 10, 1931. Efforts to procure a new loan to replace these two maturing mortgages had not been successful. The realty corporation had no quick assets by which it could pay these debts, its sole considerable asset being a parcel of improved real estate located at Fifth avenue and Twenty-eighth street in the borough of Manhattan.

The above-mentioned mortgages on that real estate were preceded by the lien of the first mortgage in the sum of $1,849,700, with interest at six and a half per cent maturing in 1941.

Real estate values in the city of New York had recently shrunk rapidly and the progress of the decline had not abated. The existing depression rendered it unlikely that these maturing mortgages could be renewed or replaced. It was apparent that within a few months at furthest Mr. Sokolski would be called upon to pay these obligations in large part and that his solvency depended on his keeping enough salable assets to meet that emergency.

Instead, he retained two bank deposits and other property clearly insufficient to enable him to meet these engagements. His cash deposits remaining in the two banks which held notes indorsed by him aggregated $119,307.34. That they were not long kept intact is of no moment upon the theory relied on by plaintiff for recovery, for no charge of fraud is presented and we are concerned with the situation as it was on December 19, 1930. The only other assets retained by the grantor were an unsecured indebtedness in the sum of $268,700 due to him from the same realty company, and shares of stock in that corporation, being thirty-five per cent of the total issue. That corporation had as above indicated no assets to meet its rapidly maturing obligations except one parcel of improved real estate, and a small amount of cash, as well as claims for unpaid rents due from tenants, amounting

in all to about $15,000. Therefore, the likelihood that Mr. Sokolski would be called upon in a few weeks to make good his guaranties was manifest in view of the realty company's lack of quick assets to meet these maturing obligations and its probable insolvency as foreshadowed by its own books of account.

It is thus clear that the assets retained by Mr. Sokolski at that time cannot reasonably be deemed adequate to extinguish these demands. He could pay these debts only if the realty company could. His solvency depended on whether the real estate could speedily be sold, at a price sufficient to pay all the debts of the realty company which he had guaranteed, so as to realize upwards of $730,000 above the first mortgage of $1,849,700. At that time it was hopeless to expect that this could be done.

Not every asset, but only such as are salable enter the equation. We hold further that these assets retained by Mr. Sokolski could not fairly be regarded as salable.

If salable at all, the unsecured claim against the realty corporation could be expected to realize only a fraction of its face. His minority interest in the share capital of the realty corporation had virtually no present or prospective salable value, so as to be of use in meeting the maturing obligations, for who would wish to acquire a minority interest in a corporation of such limited scope, where the control was in the hands of other members of Mr. Sokolski's family?

The transfer thus left the grantor with virtually no liquid realizable asset beyond the cash in bank with which to meet these debts presently to be due. Moreover, the operations of the realty corporation had never been profitable since its incorporation. Indeed its large unpaid liability to Mr. Sokolski seems to have been occasioned by its continued lack of success and its need of funds to maintain and carry its property.

Respondents endeavored to show solvency in the donor by attributing great value to the parcel of real estate held by the realty corporation, the primary obligor. They called two real estate experts (one of them the son of Mr. Sokolski) who gave to the real estate a value far higher than that shown by experts of plaintiff, whose valuations had been reached in December, 1930, when they had been called upon to examine the property for the Bank of United States which then held the maturing second mortgage. Their views find support in the affidavit that had been filed in behalf of the corporation in its effort to reduce its tax assessment, wherein the son of Mr. Sokolski, one of the experts relied on by defendants, asserted that the real estate was worth much less than the lowest amount testified to at trial. The returns

from the property show the estimates of defendants' experts to be far too high. We are led to the conclusion that the donor's non-cash assets were not salable, and if they were, their value was far less than the actual engagements which he knew he had to meet in a few weeks.

The judgment appealed from should be reversed, with costs to appellant, and judgment directed in favor of plaintiff and against defendants upon the first cause of action, with costs.

McAvoy, Merrell and Martin, JJ., concur.

Judgment reversed, with costs, and judgment directed in favor of plaintiff and against defendants upon the first cause of action, with costs. Settle order on notice reversing findings inconsistent with this determination, and containing such new findings of fact proved upon the trial as are necessary to sustain the judgment hereby awarded.