OPINION OF THE COURT
John S. Lockman, J.
Plaintiff applies to the court for an order granting it summary judgment. (CPLR 3212.) Defendants cross-move to dismiss the complaint.
While the parties disagree as to the inferences to be drawn, the facts are essentially undisputed. Joseph Oppenheim was president of Max Roth Leather Goods Corporation (the corporation) and his wife, Carol, was secretary. The corporation manufactured and distributed handbags. Early in 1972 the corporation entered into an agreement with plaintiff, Chase Manhattan Bank, pursuant to which the plaintiff extended a line of credit measured by a formula contained in the agreement and secured by, among other things, the corporation’s accounts receivable. On January 27, 1972, Mr. and Mrs. Oppenheim executed personal guarantees of the corporation’s indebtedness. On February 4, 1972, Joseph Oppenheim deeded his interest in their residence located at 1470 Kew Avenue in Hewlett which he and his wife held as tenants by the entirety to Carol. Oppenheim. Mr. Oppenheim received no consideration for the conveyance. On August 1, 1977, Carol Oppenheim conveyed her interest in the premises to Michele *650 Robin Oppenheim, the Oppenheims’ eldest daughter, again for no consideration.
Plaintiff applies to have the conveyance of August 1, 1977, from Carol Oppenheim to her daughter set aside as a fraudulent transaction pursuant to sections 278 (subd 1, par a) and 273 of the Debtor and Creditor Law and for related relief.
On October 25, 1978, plaintiff recovered a judgment against Carol Oppenheim for an amount in excess of $111,000, no part of which has been paid. Plaintiff thus now holds a matured claim against Carol Oppenheim. (Debtor and Creditor Law, § 278, subd 1, par a.) Plaintiff contends that on August 1,1977, it was a “creditor” of Mrs. Oppenheim by virtue of her unmatured obligation; that is, her guarantee of the corporation’s indebtedness to plaintiff which on that date exceeded $299,000. (Debtor and Creditor Law, § 270.) Plaintiff argues that the conveyance from Carol Oppenheim to her daughter on that date was fraudulent by virtue of section 273 of the Debtor and Creditor Law which provides: “Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration.” It is undisputed that the transaction between Carol Oppenheim and her daughter was without fair consideration.
Defendant Carol Oppenheim alleges that the conveyance was not fraudulent because the corporation was solvent on August 1, 1977. Specifically, she alleges that the corporation had accounts receivable in excess of the amount of its indebtedness to plaintiff on August 1, 1977. An examination of the agreement between the plaintiff and the corporation'reveals that the formula for determining the extent of the corporation’s credit insured that the amount of the accounts receivable would always exceed the indebtedness. Had the plaintiff felt this adequate security it would hardly have required the personal guarantee of Carol Oppenheim. More significantly, however, the issue is whether the conveyance rendered Carol Oppenheim insolvent and not whether the corporation was solvent. (Debtor and Creditor Law, § 271, subd 1; Marine Midland Bank v *651 Stein, 105 Misc 2d 768; Cating Rope Works v Johnson, 22 Misc 2d 284.)
Defendant Carol Oppenheim contends that she was solvent after the conveyance on August 1,1977, having assets in excess of $24,000. The evidence offered in support of this contention is informative even though the allegation, if assumed to be true, would not suffice to establish solvency for reasons discussed below. Defendant offers a bankbook reflecting an account with the Merchants Bank of New York. The balance was $25,000 in January of 1977; $27,000 in May of 1977; $20,000 on August 1,1977; $4,500 on September 1, 1977, and the account was closed on October 3,1977. Another account with the Chase Manhattan Bank reflects a balance of $6,000 in January of 1977; $9,000 in March of 1977; $4,000 in July of 1977; $2,100 on August 1, 1977, and the account was closed in October of 1977,
Carol Oppenheim’s allegation that she was solvent after the conveyance on August 1,1977, discounts her guarantee oi the corporation’s then indebtedness of $299,000 because her obligation was contingent and unmatured. “Section 270 of the Debtor and Creditor Law defines a debt as .any liability ‘matured or unmatured, liquidated or unliquidated, absolute, fixed or contingent.’ Defendant’s liability on the guarantee was contingent, but, nevertheless, it was a debt as defined in section 270 of the Debtor and Creditor Law. His transfer of assets left him unable to meet his debts. Since the transfers were without consideration, they are presumed to be fraudulent.” (Cating Rope Works v Johnson, 22 Misc 2d 284, 285-286, supra.)
Marine Midland Bank v Stein (supra) offers a fact pattern very close to the instant case. The defendant guaranteed a corporate loan that was “rolled-over” on numerous occasions. Two years prior to any default, defendant transferred certain real property into a trust for the benefit of his three children. After the ultimate default, the court set aside the conveyance as fraudulent because of the defendant’s contingent liability for his guarantee of the corporate indebtedness. The contingent liability was valued at the full amount of the corporation’s debt guaranteed by defendant. “This contingent liability to plaintiff was a debt *652 in the amount of $231,000, which sum itself far exceeds the present fair salable value (no more than $110,000) of the assets that defendant, Sydney Stein, himself admits to have possessed when he made the transfers to the Sydney Family Corporation. It is clear, then, that said defendant was, at least, rendered insolvent by these transfers if, indeed, he had not been insolvent prior to making them.” (Marine Midland Bank v Stein, supra, p 770.) Clearly, if, as it must, the court considers Carol Oppenheim’s guarantee of the debt of the corporation to plaintiff on August 1,1977, the conveyance to Michele Robin Oppenheim rendered her insolvent, if she was not already insolvent.
Carol Oppenheim contends that she had no intent to defraud when she conveyed her interest in the premises to her daughter and that she was only trying to protect it from her husband with whom she was having matrimonial difficulties. “Section 273 of the Debtor and Creditor Law covers constructive, as opposed to actual, fraud. Constructive fraud may be defined as a breach of duty which, irrespective of moral guilt and intent, the law declares fraudulent because of its tendency to deceive, to violate a confidence or to injure public or private interests which the law deems worthy of special protection”. (Southern Inds. v Jeremias, 66 AD2d 178, 181-182.) “‘No effort to hinder or delay creditors is more severely condemned by the law than an attempt by a debtor to place his property where he can still enjoy it and at the same time require his creditors to remain unsatisfied.’” (Matter of Gafco, Inc. v H.D.S. Mercantile Corp., 47 Misc 2d 661, 664, citing Bentley v Caille, 289 Mich 74, 78.) Assuming Mr. Oppenheim had a valid claim upon the premises (having surrendered his interest without consideration in 1972), Mrs. Oppenheim’s effort to place it beyond his reach would be no less fraudulent because the creditor she sought to “hinder and delay” was her husband. (Bennett v Bennett, 62 AD2d 1154.)
Plaintiff’s motion for summary judgment is granted and the cross motion is denied.