FARM STORES, INC., Respondent-Appellant, v SCHOOL FEED-ING CORP. et al., Appellants-Respondents, et al., Respondents.

Second Department, June 11, 1984

250

APPEARANCES OF COUNSEL

*Seavey, Fingerit, Vogel & Oziel* (*Irwin K. Fingerit* of counsel), for School Feeding Corp. and others, appellants-respondents.

*Thomas J. Nerangis* for James J. Venia, appellant-respondent.

*Dreyer & Traub* (*Samuel Kirschenbaum* and *Hannah K. Flamenbaum* of counsel), for Martin Lifton, appellant-respondent.

*Irving Levine* for respondent-appellant.

WEINSTEIN, J.

School Feeding Corp. (SFC) is a New York corporation formed in 1974 for the purpose of supplying meals to nonprofit organizations serving as sponsors of the Summer Food Service Program for Children (SFSP), which was funded by the United States Department of Agriculture (USDA) through the New York State Education Department. The SFSP was administered by the State Education Department and USDA funds for such administration were advanced to, held and paid out by the State Comptroller. In connection with this program, the State contracted with numerous service institutions to serve as sponsors for the actual feeding of the children in the program. The program sponsors, in turn, had the option to contract with food service management companies or vendors, of which SFC was one, to undertake the responsibility of preparing the meals for the children. Farm Stores, Inc., supplied fruit and juices to SFC during the summer of 1976.

When Federal funds for the program were cut off pending USDA investigations of abuses, the nonprofit sponsors were unable to pay their debts to vendors such as SFC, which was, in turn, unable to pay its debts to suppliers like Farm Stores, Inc. These appeals concern the lengthy and complex litigation undertaken by Farm Stores to collect debts owed by SFC for goods supplied in the wake of that corporation's financial collapse following the termination of Federal funding during the summer of 1976. At issue, is the propriety of the transfer by SFC to the four respondent shareholders of a portion of the sum it collected from the New York State Education Department in January, 1980.

SFC's shareholders deny that they knowingly attempted to defraud anyone and specifically dispute any wrongdoing vis-à-vis Farm Stores. They maintain that the transfers from SFC to themselves were made in good faith to satisfy their legitimate claims as creditors and that there was absolutely no conspiracy to defraud trade creditors. Furthermore, the shareholders contend that SFC was not insolvent inasmuch as SFC's claims were, in their opinion, viable and would ultimately be recovered. They contend that because the corporation was not insolvent, payment to

them was justified on the grounds that they were secured investing or lending shareholder-creditors, and trade creditors had previously benefited more than they had.

■ We conclude that the trial court correctly held that the conveyance to the four shareholders of $99,868.65 of the $126,550.05, which constitutes the sum collected by SFC from the State Education Department in January, 1980 for its part in the SFSP, must be set aside as fraudulent pursuant to section 273 of the Debtor and Creditor Law.

Section 273 of the Debtor and Creditor Law provides as follows: "Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration".

It is evident from the record that the transfers to the shareholders in late January, 1980, when SFC was virtually defunct, rendered SFC insolvent inasmuch as the fair salable value of its assets after the transfers was less than the amount that would be required to pay the probable liability on its existing debts as they became absolute and matured (Debtor and Creditor Law, § 271, subd 1). At the time the subject money was transferred to the shareholders, the only other assets of the corporation were in the form of accounts receivable from Federally funded nonprofit sponsors. There is evidence that SFC underestimated its liabilities to creditors, some of whom had outstanding judgments against SFC. SFC's ultimate liability to its creditors was substantially increased by interest and other fees accruing to judgment creditors such as Farm Stores. By way of illustration, the money owed by SFC to Farm Stores, which had been estimated by the parties at $40,000 at the time of a settlement attempt in October, 1979, had more than doubled to over $95,000 as of October, 1982 when Farm Stores entered personal money judgments against the shareholders pursuant to the judgment of September 28, 1982.

Moreover, there are strong indications that SFC vastly overestimated the value of the accounts receivable it stood to collect in the future from sponsors. Said money was

subject to ongoing contested litigation with the Federal and State Governments, the proceeds of which could be substantially reduced by compromise settlements, splitting arrangements with nonprofit sponsors and attorney's fees. The amount claimed to be due SFC from sponsors is $980,000. Despite efforts to employ collection attorneys to obtain moneys owed to sponsors by the State and Federal Governments, at the time of trial in May, 1982, SFC had only collected approximately $340,000 of the accounts receivable. The only money actually collected by SFC on an outstanding account between the time of the trial and Lifton's March, 1983 motion to vacate the September 28, 1982 judgment on the ground of newly discovered evidence was $27,500 on behalf of the Ebenezer Baptist Church. Of this sum, $19,258 was remitted to Farm Stores. With respect to an action against the State to recover a sum in excess of $238,000 on behalf of a nonprofit sponsor, an order of the Court of Claims granting leave to file a late notice of claim acknowledged the validity of the claim only to the extent of $15,919.20. The record reveals that the collectability of several default judgments as well as the claim against the State in the Court of Claims was uncertain at best. It is thus evident that the effort to collect overdue accounts offered little promise of probable or timely success. In this regard, *Glenmore Distilleries Co. v Seideman* (267 F Supp 915) is instructive. SFC's accounts receivable were analogous to the claim of the debtor corporation in that case against its judgment creditor for damages in *quantum meruit,* which claim was pending at the time certain payments to the debtor corporation's shareholders and directors were invalidated as fraudulent. Inasmuch as SFC's accounts receivable were so inchoate, uncertain and contingent in nature, they lacked present fair salable value within the meaning of the Debtor and Creditor Law. By definition, SFC was insolvent at the time of January, 1980 transfers to the shareholders (Debtor and Creditor Law, § 271, subd 1).

The second element of a fraudulent conveyance pursuant to section 273 of the Debtor and Creditor Law is the lack of fair consideration. Fair consideration exists when, in exchange for property or an obligation, "as a fair equivalent

therefor, and in good faith, property is conveyed or an antecedent debt is satisfied" (Debtor and Creditor Law, § 272, subd a). The shareholders failed to adequately substantiate their claim that the antecedent debt represented by their alleged loans to and services rendered on behalf of the corporation constituted a fair equivalent for the moneys they received from SFC in January, 1980. Assuming, *arguendo,* that the shareholders were able to establish that the funds they received from SFC were equivalent to the value of the loans and services they had previously advanced, the transfers to them were still invalid inasmuch as they were not made in good faith within the meaning of section 272 of the Debtor and Creditor Law. It has been held that preferential transfers to directors, officers and shareholders of insolvent corporations in derogation of the rights of general creditors do not fulfill the good-faith requirement of the Debtor and Creditor Law. "Whether it be upon the theory that directors of insolvent corporations are trustees for the benefit of all creditors, or upon the theory that it would be inequitable to allow directors to use inside information and their controlling voice in corporate affairs to benefit themselves over the claims of others, the common law forbids preferences to directors of insolvent corporations as being contrary to principles of fair, honest and open dealing * * * Accordingly, the transfer in this case is void because, although made for a fair consideration, it was not made in good faith" (*Southern Inds. v Jeremias,* 66 AD2d 178, 185; accord *Julien J. Studley, Inc. v Lefrak,* 66 AD2d 208, 215, affd 48 NY2d 954).

There is no merit to the contention of shareholder Lifton that the repayment of his alleged loans to SFC cannot be considered an unconscionable advantage of a corporate fiduciary over the rights of general creditors because he functioned primarily as an outside lender to the corporation and exerted no control over its business affairs. Although Lifton may not have participated in the day-to-day business affairs of SFC, he exercised his influence as a shareholder in decisions which directly affected his investments. It is undisputed that Lifton gave his consent to all distributions of funds collected by SFC in 1979 and 1980, including those distributions challenged as fraudulent in

this action. Moreover, Lifton admitted having been present at the meeting when the decision relating to the distribution of the subject money among the shareholders was made.

The transfer of the funds collected on behalf of SFC to the shareholders is also invalid pursuant to section 273-a of the Debtor and Creditor Law, which provides as follows: "Every conveyance made without fair consideration when the person making it is a defendant in an action for money damages or a judgment in such an action has been docketed against him, is fraudulent as to the plaintiff in that action without regard to the actual intent of the defendant if, after final judgment for the plaintiff, the defendant fails to satisfy the judgment".

It is undisputed that SFC was a defendant in an action brought by Farm Stores in the Supreme Court, New York County, for money damages based upon breach of contract when the subject transfer to the shareholders was made. Judgment was entered against SFC in that action in 1980. The amount of the judgment was later increased on appeal (*Farm Stores v School Feeding Corp.,* 79 AD2d 504, affd 53 NY2d 910). Inasmuch as SFC failed to satisfy the judgment in favor of Farm Stores prior to the entry of judgment in the instant turnover proceeding, the transfer to the shareholders comes within the purview of section 273-a of the Debtor and Creditor Law and must be invalidated (see *Community Nat. Bank & Trust Co. v Statile,* 94 AD2d 754; *Merman v Miller,* 82 AD2d 826; *Schoenberg v Schoenberg,* 113 Misc 2d 356, mod on other grounds 90 AD2d 827).

It has been held that where a fraudulent conveyance has been established, each transferee who was not a bona fide purchaser for fair consideration (see Debtor and Creditor Law, § 278, subd 1) is liable to the creditor to the extent of the value of the money or property he or she wrongfully received (see *De West Realty Corp. v Internal Revenue Serv.,* 418 F Supp 1274, 1279; *United States v 58th St. Plaza Theatre,* 287 F Supp 475). The shareholders cannot be considered bona fide purchasers for fair consideration who are immune from liability as transferees of fraudulently conveyed property, as the record reveals that they were aware that they were receiving money from SFC

when the claims of the general creditors had not been completely paid and, in fact, they consented to such a distribution of the corporate funds. Therefore, each shareholder has some liability to the trade creditors. There is insufficient evidence, however, to support a conclusion that the shareholders engaged in a conspiracy and actually intended to defraud the trade creditors. Thus, they may not be held jointly and severally liable (cf. *Nederlandsche Handel-Maatschappij N. V. v Schreiber,* 17 AD2d 783). Rather, the liability of each SFC shareholder must be limited to the amount he wrongfully received.

■ ■ As respects Farm Stores' challenge to the trial court's denial of its application for punitive damages and attorney's fees, we conclude that that determination must be upheld. The standard for an award of punitive damages in an action to recover damages for fraud is a stringent one. Courts have authorized punitive damages in cases involving fraud aimed against private parties rather than the general public only where "the defendant's conduct evinced a high degree of moral turpitude and demonstrated such wanton dishonesty as to imply a criminal indifference to civil obligations" (*Walker v Sheldon,* 10 NY2d 401, 405; accord *Chase Manhattan Bank v Perla,* 65 AD2d 207, 211).

■ At bar, Farm Stores was unable to establish that the shareholders acted with actual intent to defraud creditors in order to justify setting aside the transfers pursuant to section 276 of the Debtor and Creditor Law. Notwithstanding the fact that the transfers of the corporate funds were properly invalidated pursuant to the constructive fraud provisions of the Debtor and Creditor Law, there was no evidence that SFC or its shareholders acted with the high degree of moral culpability required to justify an award of punitive damages (see *Borkowski v Borkowski,* 39 NY2d 982, 983; *J.G.S., Inc. v Lifetime Cutlery Corp.,* 87 AD2d 810).

■ The trial court was also correct in holding that Farm Stores' attorney was not entitled to fees under section 276-a of the Debtor and Creditor Law in view of the absence of satisfactory proof of actual intent to defraud creditors (see *Schoenberg v Schoenberg,* 90 AD2d 827, *supra*). The attorney's fees provision of section 276-a is inapplicable where

the subject conveyance is invalid under the constructive fraud provisions of the Debtor and Creditor Law as opposed to the actual fraud provisions thereof (*Southern Inds. v Jeremias,* 66 AD2d 178, *supra*).

Nor is Farm Stores entitled to counsel fees by virtue of paragraph 4 of the order form utilized by SFC, which form contains the terms of the contract of sale with the suppliers. Said paragraph provides, in pertinent part, that "Buyer also agrees to pay reasonable attorney fees and other costs incurred at collection". This provision imposes an obligation with respect to attorney's fees only upon SFC, rather than the individual shareholders who are the parties in interest in this proceeding. Under these circumstances, we do not interpret this contractual provision as imposing a liability upon the shareholders for attorney's fees where they would not otherwise be liable pursuant to section 276-a of the Debtor and Creditor Law.

We have considered the parties' other contentions and find them to be without merit.

GIBBONS, J. P., THOMPSON and BROWN, JJ., concur.

Judgment modified, on the law, by deleting therefrom the second and seventh decretal paragraphs holding all officers and shareholders jointly and severally liable for the sum $82,765.54 and substituting therefor a provision authorizing the entry of money judgments against each individual shareholder personally only for the money he wrongfully received from SFC on January 25, 1980, viz., $29,467.15 against Norman Lichtman, $9,467.15 against Irwin Sandler, $24,467.20 against Martin Lifton and $36,467.15 against James J. Venia. As so modified, judgment affirmed insofar as appealed from, without costs or disbursements.

Order entered January 18, 1983 affirmed insofar as appealed from, without costs or disbursements.

Order dated May 16, 1983 affirmed insofar as appealed from, without costs or disbursements.