**CONTINENTAL BANK N.A., Plaintiff,**

v.

**Eileen MODANSKY and Aaron Modansky, Defendants.**

**No. 92 Civ. 8693 (RPP).**

United States District Court, S.D. New York.

Aug. 25, 1993.

Strassberg & Strassberg, P.C. by Todd Strassberg, New York City, for plaintiff.

Leonard Zack & Associates by Leonard Zack, New York City, for defendants.

## OPINION AND ORDER

ROBERT P. PATTERSON, Jr., District Judge.

Plaintiff Continental Bank N.A. ("Continental") brought this action pursuant to Article 10 of the New York Debtor and Creditor Law ("DCL"), Sections 273, 275, and 276, to set aside three transfers of 1 Tor Terrace, New City, New York, a parcel of real estate containing the former residence of the defendants, Eileen and Aaron Modansky. This Court's jurisdiction is based on diversity, 28 U.S.C. § 1332.

This case was tried to the Court on April 29, 1993, and May 24, 1993. This opinion constitutes the Court's findings of fact and conclusions of law.

On January 16, 1989, defendant Aaron Modansky executed a deed transferring title to 1 Tor Terrace, New City, New York,

to defendant Eileen Modansky. On February 22, 1989, the deed was filed with the Rockland County Clerk. No transfer tax was paid in connection with the transfer (Pl.Exh. 4). The property in question had been valued at $550,000 in a Statement of Financial Condition as of February 28, 1987, submitted by defendant Aaron Modansky in connection with his personal guarantees of a line of credit of $15,000,-000 from Continental to Ajayem Lumber Corp. and its affiliated corporations ("Ajayem") (Pl.Exh. 1; Tr, dated Apr. 29, 1993, at 97).

■ Continental claims that Aaron Modansky's conveyance of 1 Tor Terrace constitutes a fraudulent conveyance pursuant to Section 273 of New York's DCL. DCL § 273 reads as follows:

> Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration.

Since a "creditor" under the DCL is "a person having any claim whether matured or unmatured, liquidated or unliquidated, absolute, fixed or contingent," and a "debt" includes "any legal liability, whether matured or unmatured, liquidated or unliquidated, absolute, fixed or contingent," (DCL § 270), defendant Aaron Modansky by virtue of his guarantees of Ajayem's line of credit from Continental was indebted to Continental at the time he made the transfers.

Continental maintains that the transfers were made without fair consideration and that Aaron Modansky was insolvent at the time he made the transfers, thus violating DCL § 273.

Defendants maintain that Aaron Modansky was not insolvent at the time of transfer, January 16, 1989, and that 1 Tor Terrace was transferred for fair consideration.

### A. *Insolvency Under DCL § 271*

■ Continental bases its claim that Aaron Modansky was insolvent on January 16, 1989, on the Statement of Financial Condition as of February 28, 1987, (Pl.Exh. 1), submitted by Aaron Modansky on April 15, 1987, in support of his guarantees of Ajayem's $15 million line of credit obtained from Continental on May 7, 1987 (Pl.Exh. 2). That Statement of Financial Condition reads as follows:

AARON MODANSKY
STATEMENT OF FINANCIAL CONDITION
AS OF FEBRUARY 28, 1987

ASSETS

| | | |
|---|---:|---:|
| Cash in bank | | $ 51,000 |
| IRA accounts | | 6,750 |
| Pension plan (Note 2) | | 100,000 |
| Investments in privately owned companies: (Note 3) | | |
| 42% Ajayem Investors Corp. | $1,000,000 | |
| 50% Modansky Brothers—land and bldg., Walden, NY | 550,000 | |
| 33⅓% 801 Properties Co. land and building, Charlotte, North Carolina | 72,000 | |
| 25% New Family Properties land and building Columbus, Ohio | 20,000 | |
| 33⅓% Family Properties land and building Tampa, Florida | 160,000 | |
| | | 1,802,000 |
| Marketable securities | | 310,000 |
| Personal residence (Note 4) | | 550,000 |
| TOTAL ASSETS | | $2,819,750 |

LIABILITIES AND NET WORTH

| | |
|---|---|
| Mortgage payable (Note 4) | $30,000 |
| Estimated income tax (Note 5) | 367,000 |
| Net worth | 2,422,750 |
| TOTAL LIABILITIES AND NET WORTH | $2,819,750 |

Commitments and contingencies (Note 6)

AARON MODANSKY
NOTES TO STATEMENTS OF FINANCIAL CONDITION
FEBRUARY 28, 1987
(See Accountants' Compilation Report)

NOTE 1  The accompanying statement of financial condition includes the assets and liabilities of Aaron Modansky. Assets are stated at their estimated current values and liabilities at their estimated current amount.

NOTE 2  Pension plan represents Aaron Modansky's vested interest in the Ajayem Lumber Pension Trust.

NOTE 3  Investments in privately owned companies represents interests in stock of Ajayem Lumber Corp. and affiliated companies and partnership interests in companies which own land and buildings used by the operating companies.

NOTE 4  The personal residence at 1 Tor Terrace, New City, New York is a single family home which is owned 100% by Aaron Modansky. The mortgage payable is a first mortgage against the property.

NOTE 5  The estimated current amounts of liabilities at February 28, 1987 equaled their tax bases. Estimated income taxes have been provided on the excess of the estimated current values of assets over their tax bases as if the estimated current values of the assets had been realized on the statement date, using applicable tax laws and regulations. The provision will probably differ from the amounts of income taxes that eventually might be paid because those amounts are determined by the timing and the method of disposal or realization and the tax laws and regulations in effect at the time of disposal or realization.

NOTE 6  The individual is a guarantor on loans made to the various privately owned companies.

---

As explained below, by January 16, 1989, Mr. Modansky's net worth was negative, and no longer the $2,422,750 positive net worth it was on February 28, 1987, as indicated in Plaintiff's Exhibit 1.

Each of the personal guarantees executed by Aaron Modansky on April 15, 1987, stated it was "unlimited" in amount, "plus interest on such amount and plus all expenses in enforcing this guaranty," and stated that "in the event of ... the inability of the Debtor ... to pay debts as they mature ..., undersigned will pay to the Bank forthwith the full amount which would be payable hereunder...." (Pl.Exh. 2).

On October 26, 1988, Ajayem and each of its affiliates by Aaron Modansky, President, executed Chapter 11 Petitions in Bankruptcy filed in the United States Bankruptcy Court for the Southern District of New York on November 4, 1988, stating that they were unable to pay their debts as they mature (Pl.Exh. 17). Accordingly, Mr. Modansky's guarantees of the Ajayem debts to Continental by their terms became immediately payable. Ajayem's debts to Continental at this point were approximately $9.4 million (Def.Exh. A at 6).

On December 8, 1988, upon the consent of the debtors and Continental, a Final Order Authorizing the Limited Use of Cash Collateral and Granting Liens and Administrative Priority (the "cash collateral order") was entered by the Bankruptcy Court pursuant to which the closely held companies owning the land and buildings listed in Plaintiff's Exhibit 1 granted security interests, over existing loans of $1.9 million, in their real estate holdings to Continental, and Continental agreed to extend cash collateral to the debtors until January 9, 1989, and not to sue Ajayem Investors Corp., which held all the stock of the debtor companies, or Aaron Modansky before that date (Def.Exh. A). On January 9, 1989, the

Bankruptcy Court entered a stipulation extending the effective date of the cash collateral order to January 16, 1989 (Pl.Exh. 27). Prior to January 16, 1989, Ajayem Investors Corp. also filed for bankruptcy (Tr., dated May 24, 1993, at 13–14).

In view of the inability of the Ajayem Lumber Corporation and its affiliated companies to pay their debts as they matured in November, Mr. Modansky had a probable liability to pay those debts on and after November 4, 1988, pursuant to his guarantees (Pl.Exh. 2). The cash collateral order entered December 8, 1988, deferred the probability of this liability to January 16, 1989, at which time Continental had a right to pursue Mr. Modansky on the guarantees.

■ In determining a debtor's insolvency, Section 271 of the DCL requires that not only absolute liabilities but that probable liabilities also be included. It states:

**§ 271. Insolvency**

1. A person is insolvent when the present fair salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured.

Under New York law, a guarantee of a loan is a probable liability which must be considered in determining a person's solvency at the time of a transfer under DCL § 273. *Marine Midland Bank v. Stein*, 105 Misc.2d 768, 433 N.Y.S.2d 325, 327 (Sup.Ct.1980); *accord Chase Manhattan Bank v. Oppenheim*, 109 Misc.2d 649, 440 N.Y.S.2d 829, 831 (Sup.Ct.1981).

Applying this new probable liability of $9.4 million, which existed on January 16, 1989, against Mr. Modansky's Statement of Financial Condition, showing a net worth of

approximately $2.4 million as of February 28, 1987, results in a deficit of a probable liability of $7 million.[1]

Other adjustments to Mr. Modansky's Statement of Financial Condition have to be made to reflect the changes in his financial circumstances since February 28, 1987.

First, the February 28, 1987, Statement of Financial Condition valued Mr. Modansky's investments in five privately owned companies at $1,802,000 (Pl.Exh. 1). As a result of the cash collateral order, four of those five companies granted Continental additional security interests in their real estate holdings, each of which was leased to Ajayem, of up to $1.5 million, thus reducing their equity values (Def.Exh. A; Pl. Exh. 24). Also, as previously stated, Ajayem Investors Corp., which is the fifth privately owned company listed in Plaintiff's Exhibit 1 as an investment of Mr. Modansky, filed for bankruptcy. (Tr., dated May 24, 1993, at 13–14). Thus, by January 16, 1989, Mr. Modansky's fractional interests in the privately owned companies had been reduced in terms of the "fair salable value" of these assets, the standard required to be used in determining insolvency under DCL § 271, to insignificant values from the $1,802,000 total listed in the Statement of Financial Condition.[2]

■ In addition, for purposes of evaluating Mr. Modansky's solvency, the value for the Ajayem Lumber Pension Trust, included in the Statement of Financial Condition at $100,000, cannot be considered. DCL § 270 in relevant part provides:

In this article "assets" of a debtor means property not exempt from liability for his debts. To the extent that any property is liable for any debts of the debtor, such property shall be included in his assets.

*States Trust Co.*, 236 A.D. 500, 260 N.Y.S. 40, 44 (1st Dep't, 1932), *aff'd*, 262 N.Y. 557, 188 N.E. 63 (1933). For example, a debtor's minority interest in the share capital of a realty corporation owned by the debtor and members of his family was held to be of virtually no value on the theory that few investors would wish to acquire a small minority interest in a corporation held closely by members of one family. *Id.*

---

**1.** The Statement of Financial Condition indicates that Mr. Modansky had other contingent liabilities as of February 28, 1987, in all probability guarantees of the existing loans of $1.9 million on the closely held real estate holdings leased to Ajayem, which would have further reduced his stated net worth of $2.4 million.

**2.** In determining insolvency under DCL § 271, "[n]ot every asset, but only such as are salable, enter the equation." *Chase Nat'l Bank v. United*

It is uncontested that pursuant to Section 5205(c) of the New York Civil Practice Law and Rules ("CPLR"), the Ajayem Lumber Pension Trust is exempt from application to Mr. Modansky's debts. *See In re Orlebeke*, 141 B.R. 569, 570 (Bankr.S.D.N.Y. 1992). Accordingly, Mr. Modansky's assets as listed on his February 28, 1987, Statement of Financial Condition must be further reduced by $100,000.

Finally, for purposes of calculating solvency, Mr. Modansky's personal residence at 1 Tor Terrace, which is the subject of this fraudulent conveyance action, must not be considered since DCL § 273 requires by its terms that the effect of the conveyance of property transferred be considered in determining solvency.

In view of the foregoing, it seems clear that under New York law, Aaron Modansky was insolvent when he transferred 1 Tor Terrace to his wife on January 16, 1989.

### B. *Fair Consideration Under DCL § 272*

What is "fair consideration" is governed by DCL § 272, which reads as follows:

### § 272. Fair Consideration

Fair consideration is given for property, or obligation,

a. When in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied, or

b. When such property, or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property, or obligation obtained.

In this case, defendants maintain that 1 Tor Terrace was transferred to Eileen Modansky in consideration for her earlier investment of money inherited from her father. Mrs. Modansky allegedly invested $260,000 to construct a swimming facility in the premises at 1 Tor Terrace for health and rehabilitative purposes (Def.Exh. C).

The Court does not accept defendants' contention. Although the improvements were in fact made on the premises from around 1976 to 1978, (Tr., dated May 24, 1993, at 23–24), transfers to relatives require careful scrutiny. *White v. Benjamin*, 150 N.Y. 258, 265, 44 N.E. 956 (1896). The evidence adduced at trial indicates the absence of an antecedent debt. First, no transfer taxes were paid on the transfer of title to Eileen Modansky (Pl.Exh. 4). Second, Aaron Modansky *did not disclose* this antecedent debt on his Statement of Financial Condition submitted to Continental on April 15, 1987 (Pl.Exh. 1). Third, there has been no documentary proof of the amount of any inheritance by Eileen Modansky. Nor has there been any documentary evidence demonstrating that the indoor swimming pool and other improvements in fact cost $260,000 and were paid for by Mrs. Modansky.

Furthermore, even if the alleged antecedent debt of $260,000 did exist, it did not constitute adequate consideration for the transfer of 1 Tor Terrace. Assuming the antecedent debt existed, property valued at $550,000, with a $30,000 mortgage, was transferred to Eileen Modansky for one-half that value, $260,000. *See Wilson v. Robinson*, 83 F.2d 397, 398 (2d Cir.) (transfer of equity of $5,000 in satisfaction of alleged antecedent debt of $3,000 to $4,000 was not a transfer for fair consideration), *cert. dismissed*, 299 U.S. 616, 57 S.Ct. 757, 81 L.Ed. 455 (1936).

On January 22, 1990, only one year after the transfer to Eileen Modansky, the defendants decided to obtain funds by refinancing 1 Tor Terrace for the purchase of a residence in Florida in Eileen Modansky's name; accordingly, the property was transferred to joint ownership and thereafter $263,000 was borrowed for purchase of the Florida residence (Pl.Exhs. 5, 10, 15, 16). The refinancing was closed on March 12, 1990 (Pl.Exh. 16). No transfer tax was paid on the transfer to joint ownership (Pl.Exh. 5), and on March 20, 1990, Eileen

Modansky took title to defendants' current residence, 10614 Boca Woods Lane, Boca Raton, Florida (Pl.Exh. 23).[3]

For the reasons stated, the transfer of 1 Tor Terrace on January 16, 1989, is found to not have been made for fair consideration.

## C. *Conclusion*

Accordingly, the conveyance of 1 Tor Terrace by Aaron Modansky to Eileen Modansky is found to be fraudulent since it was a conveyance made by a person who was insolvent as to creditors and it was made without a fair consideration.

The conveyance diminished Mr. Modansky's assets, as represented on the February 28, 1987, Statement of Financial Condition submitted in connection with the guarantees at issue, by $550,000, less the mortgage of $30,000 outstanding, or by a net sum of $520,000. Under these circumstances, Continental is entitled to a judgment against Eileen Modansky in an amount up to $520,000, but not to exceed the unsatisfied amount of the judgment entered against Aaron Modansky and Sheldon Modansky on May 6, 1992, in the District Court for the Northern District of Illinois. *See DeWest Realty Corp. v. Internal Revenue Service*, 418 F.Supp. 1274, 1279 (S.D.N.Y.1976); *Farm Stores, Inc. v. School Feeding Corp.*, 102 A.D.2d 249, 477 N.Y.S.2d 374, 379 (2d Dep't, 1984), *aff'd*, 64 N.Y.2d 1065, 489 N.Y.S.2d 877, 479 N.E.2d 222 (1985).

Based on the timing and other circumstances of transfer, the transfer of 1 Tor Terrace to Eileen Modansky is found to have been made with actual intent to defraud creditors. Accordingly, Continental is entitled to recover its reasonable attorney's fees incurred in this action against Aaron Modansky and Eileen Modansky in

an amount to be fixed by the Court. DCL § 276–a.

IT IS SO ORDERED.

---

**3.** On March 22, 1990, Continental instituted its action against Aaron Modansky, Sheldon Modansky, and Ajayem Investors Corp. in the United States District Court for the Northern District of Illinois based on their personal guarantees of Ajayem's $15 million revolving loan (Pl.Exh. 19). This action resulted in a judgment against Aaron and Sheldon Modansky in the principal amount of · $4,055,999.81, plus interest of $2,277,523.33 (Pl.Exh. 3).