**In re RAVE COMMUNICATIONS, INC., Debtor.**

**Lynn P. HARRISON III, as Trustee for the Estate of Rave Communications, Inc., Plaintiff,**

**v.**

**ENTERTAINMENT EQUITIES, INC., Entertainment Media Group Ltd., Media Partners Ltd., Rockbill, Inc., Joshua C. Simons, Jay Coleman, William Kosovitch and Steven Grossman, Defendants.**

**Bankruptcy No. 88–B–11936.
Adv. No. 90–6485A.**

United States Bankruptcy Court, S.D. New York.

March 18, 1992.

---

Curtis, Mallet–Prevost, Colt & Mosle by Gary M. Fuerman, New York City, for Chapter 7 Trustee, Lynn P. Harrison III.

Whitman & Ransom by Thomas G. Bailey, Jr., New York City, for Corporate defendants.

Reaves & Yates by James A. Reaves, New York City, for Individual defendants.

RESERVE DECISION ON
DEFENDANTS' MOTION
TO DISMISS

CORNELIUS BLACKSHEAR,
Bankruptcy Judge.

I. FACTS

On October 9, 1990, the Trustee for Rave Communications, Inc. ("Rave" or "Debtor") filed the original complaint in this action naming four corporate defendants, and four individual defendants. The corporate defendants, all firms closely related to the Debtor, are Entertainment Equities, Inc. ("EE"), a Delaware corporation; Entertainment Media Group, Ltd. ("EMG"), a Delaware corporation; Media Partners, Ltd. ("MP"), a Canadian corporation; and Rock-

bill Inc. ("Rockbill"), a New York corporation (collectively, "Corporate Defendants"). The individual defendants, all officers or board members of the Debtor, are Joshua C. Simons ("Simons"), Jay Coleman ("Coleman"), William Kosovitch ("Kosovitch"), and Steven Grossman ("Grossman") (collectively, "Individual Defendants").

The Corporate Defendants and the Individual Defendants, separately and jointly, moved to dismiss the original complaint. Rather than respond to these motions prior to the return date, the Trustee filed an amended complaint on March 8, 1991, asserting essentially the same causes of action against the same defendants as asserted in the original complaint.

The Amended Complaint [1] contains ten claims for relief pursuant to the Bankruptcy Code, the New York Debtor & Creditor Law ("DCL"), the New York Business Corporations Law ("BCL"), and the common law; seeking, in summary: (1) to pierce the corporate veil, and reach the Individual Defendants, to hold them jointly and severally liable with the Corporate Defendants for all debts of Rave; (2) to avoid asset transfers as fraudulent conveyances pursuant to § 548(a)(1) & (a)(2) and the Alter Ego Doctrine; (3) to disallow any claims asserted by the Individual Defendants in the bankruptcy proceeding; (4) to impose punitive damages upon all Defendants; (5) to impose joint and several liability upon the Individual Defendants for breach of their fiduciary duties to the Debtor pursuant to § 544(b) of the Bankruptcy Code and §§ 717, 719, and 720 of the New York BCL.[2]

---

1. Cited as "Cmplt. ¶."

2. The ten counts, as the Trustee listed them, are as follows:

First Claim for Relief: Each of the named Defendants is responsible for all of the Debtor's debts.

Second Claim for Relief: Avoidance of fraudulent transfers pursuant to Bankruptcy Code § 548(a)(2) against all Defendants.

Third Claim for Relief: Avoidance of fraudulent transfers pursuant to Bankruptcy Code § 548(a)(1) against all Defendants.

Fourth Claim for Relief: Avoidance of fraudulent conveyances pursuant to Bankruptcy Code § 544(b) and New York Debtor & Creditor Law §§ 272, 276 and 276–a against each of the Individual Defendants and related companies.

Fifth Claim for Relief: Avoidance of fraudulent conveyances pursuant to Bankruptcy Code § 544(b) and New York Debtor & Creditor Law §§ 272, 273, 274 and 275 against the related companies.

Sixth Claim for Relief: Avoidance of fraudulent conveyances pursuant to Bankruptcy Code § 544(b) and New York Debtor & Creditor Law §§ 272, 273, 274 and 275 against the Individual Defendants.

Seventh Claim of Relief: Avoidance of fraudulent conveyances pursuant to Alter Ego Doctrine, Bankruptcy Code § 544(b) and New York Debtor and Creditor Law §§ 272, 273, 274 and 275 against the Individual Defendants and the related companies.

Eighth Claim for Relief: Objection to and disallowance of certain claims against the Debt-

The Corporate Defendants and the Individual Defendants, separately and jointly, moved to dismiss the Trustee's complaint for failure to plead the charges of fraud with particularity, as required by Rule 9(b) of the Federal Rules of Civil Procedure. Defendants assert that the requirements of Rule 9(b) are particularly suitable in this case for two reasons. First, the Trustee has had access to the Debtor's books and records for more than two years, and therefore, could particularize evidence showing grounds for fraud, and second, because the Trustee seeks to pierce the corporate veil and impose remote transferee liability.

## II. BACKGROUND

The Trustee alleges that the Debtor, essentially a captive company, was stripped and rendered inoperable by its corporate parent and affiliates (the Corporate Defendants), and by the individuals who controlled these corporate entities (the Individual Defendants). Cmplt. ¶¶ 67–87. The facts, pled primarily upon information and belief, that allegedly gave rise to the claims of fraudulent transfer, are as follows:

Rave and EMG, are wholly owned by Rockbill. The parent company of Rockbill is EE, a holding company. Rockbill's primary business is providing corporate marketing and promotional services to music industry clients. The Debtor's primary purpose was to publish, and to bear the costs of publishing, programs for rock concerts, for Rockbill. The Debtor did not have facilities for printing the publications, so they subcontracted the work out to various printers. This resulted in the accumulation of accounts payable that, allegedly, perpetually exceeded Debtor's receivables.

The accumulation of unpaid printing costs caused the Debtor to become insolvent on or before July 1, 1986. Allegedly, both Simons and Coleman were aware of the Debtor's cash flow deficiencies prior to 1988, but used the Debtor to insulate its parent, Rockbill, from publishing costs. Cmplt. ¶¶ 39 & 40.

Prior to 1988, the Debtor applied for and obtained a loan of $500,000 from Chemical Bank. The loan was collateralized by the assets of the Debtor, the guaranty of Rockbill, the hypothecation of Rockbill's assets, and the personal guarantees of both Coleman and Simons. In May 1988, Chemical extended the maturity date of the loan, and provided an additional line of credit of $400,000, which was collateralized by a $200,000 certificate of deposit from Rockbill and a $200,000 certificate of deposit from Entertainment Marketing Communications International Ltd., an affiliated company. Cmplt. ¶ 46. Despite the loans and extensions, the Debtor's financial condition continued to deteriorate. Further, despite the deterioration, the Debtor and Rockbill allegedly continued their practice of executing intercompany loans and paying one another's bills.

Coleman and Simons, allegedly aware of the financial weakness of the Debtor and Rockbill, solicited Grossman and Kosovitch for a capital infusion through investment in Debtor and Rockbill, among others. The investment caused a restructuring of both the management and the ownership of the enterprise.

First, Coleman was no longer the sole shareholder of Rockbill. Instead, Kosovitch formed Entertainment Equities ("EE") as a holding company to wholly own Rockbill. Cmplt. ¶ 54. Coleman, Media Partners and Simons were the owners of EE. Kosovitch was Chief Financial Officer ("CFO") of EE and served as Secretary/Treasurer. Rockbill was managed by Coleman (President), Simons (Vice President), and Grossman (Executive Vice President).

Rockbill remained sole owner of the Debtor, Rave, which was now managed by Simons (President and Director), Kosovitch (Secretary/Treasurer and Director), and Coleman (Chairman of the Board). Cmplt.

---

or pursuant to, *inter alia,* Bankruptcy Code § 502(d).

Ninth Claim for Relief: Punitive Damages.

Tenth Claim for Relief: Breach of fiduciary duty pursuant to Bankruptcy Code § 544(b) and New York Business Corporation Law §§ 717, 719 and 720 against Individual Defendants.

¶¶ 55–58. Kosovitch was CFO of Rockbill in addition to being CFO of EE, the holding company. "In effect, Coleman and Simons exchanged direct ownership of Rockbill and the Debtor for a combined 65% ownership interest in EE, the sole owner of Rockbill and, in turn, the Debtor's ultimate corporate parent." Trustee's Response pp. 5–6.

The Trustee alleges the Defendants planned to rid the EE enterprise of its major liability, Rave, while preserving the other subsidiaries. EE, controlled by Coleman, Simons, Media Partners and Kosovitch, formed a wholly-owned subsidiary, EMG, on August 26, 1988, allegedly for the primary purpose of acquiring the assets of the Debtor. Trustee's Response at p. 6. The Debtor, pursuant to an asset purchase agreement dated August 30, 1988, transferred its assets to EMG, while leaving its liabilities in its corporate shell. Cmplt. ¶¶ 80–85. This transfer allegedly rendered the Debtor inoperable, depriving its creditors of the opportunity to become whole, while allowing EE and its individual owners to continue in business free of the Debtor's liabilities. Cmplt. ¶¶ 82 & 86.

Therefore, the principal claim concerns the allegedly fraudulent conveyance of assets from the Debtor to EMG; and the liability of the transferee of the assets to restore the transferred assets or their value.

## III. LAW

### A. *Rule 9(b)*

Both the Corporate Defendants and the Individual Defendants have moved to dismiss the Amended Complaint for failure to plead with particularity as required by Federal Rule of Civil Procedure 9(b), made applicable to this Adversary Proceeding by Bankruptcy Rule 7009.

■ Ordinarily, the Rules only require a petitioner to set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a). A general summary of a claim, not the pleading of fact or detail, is necessary. *Hassett v. Ganz (In re O.P.M. Leasing Services, Inc.)*, 21 B.R. 986, 993 (Bankr.

S.D.N.Y.1982). A complaint must set forth the basis for relief, but little else is required. *In re Castillo*, 7 B.R. 135, 136 (Bankr.S.D.N.Y.1980).

■ Contrary to this approach of simplified pleading, a "special pleading requirement" applies to pleadings in fraud cases. *Ross v. A.H. Robins Co.*, 607 F.2d 545, 557 (2d Cir.1979), *cert. denied*, 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980). Rule 9(b) requires that in "all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." When Rule 9(b) applies to pleadings, the factual allegations required are: (1) specified facts; (2) sources that support the alleged specific facts; and, (3) a basis from which an inference of fraud may fairly be drawn. *Crystal v. Foy*, 562 F.Supp. 422, 425 (S.D.N.Y.1983), *cited with approval* in *Hassett v. Zimmerman (In re O.P.M. Leasing Services, Inc.)*, 32 B.R. 199, 203 (Bankr.S.D.N.Y.1983). The plaintiff in *Crystal* was reprimanded for relying on generalities, and for failing to supply factual sources and specific dates, such that the court believed the plaintiff "was not seeking to redress a wrong, but rather to find one." *Crystal* at 433.

■ Rule 9(b) must be read in harmony with Rule 8(a), *Wieboldt Stores, Inc. v. Schottenstein*, 94 B.R. 488, 498 (N.D.Ill. 1988); therefore, a court must consider the purposes of Rule 9(b) to determine whether a pleading is sufficient. *Id.* The purposes of Rule 9(b) are to protect the reputation of one accused of fraud, and to give notice to the opposing party sufficient to enable them to begin preparations for a defense. *In re O.P.M.*, 32 B.R. at 203.

### B. *Requirements for Pleading Piercing of Corporate Veil*

■ This motion does not require us to decide whether to pierce the corporate veil, but merely to decide whether the pleadings are sufficient to begin litigation of the veil piercing issue. The leading case on this issue is *Walkovszky v. Carlton*, 18 N.Y.2d

414, 276 N.Y.S.2d 585, 223 N.E.2d 6 (1966).[3] There, the court held that pleadings were insufficient to maintain an action to pierce the corporate veil because the pleadings alleged only that the assets of the defendant corporation, together with the statutorily mandated minimum amount of liability insurance coverage, were insufficient to fully compensate the plaintiff, a tort victim. *Id.* at 419, 276 N.Y.S.2d 585, 223 N.E.2d 6. Merely pleading that a corporation has insufficient assets to pay a claim is not enough to state a cause of action for fraud, and is not enough to state a cause of action to pierce the corporate veil.

 The court in *Walkovszky* recognized that, "[b]roadly speaking, the courts will disregard the corporate form ... whenever necessary 'to prevent fraud or to achieve equity.'" *Id.* at 417, 276 N.Y.S.2d 585, 223 N.E.2d 6, *citing International Aircraft Trading Co. v. Manufacturers Trust Co.*, 297 N.Y. 285, 292, 79 N.E.2d 249, 252. The *Walkovszky* court instructed the plaintiff on what additions would be necessary to make plaintiff's pleadings sufficient. Plaintiff could plead that none of a group of affiliated corporations had their own separate existence, naming all the affiliates as defendants. Under such a fact pattern it might be appropriate to pierce the corporate veil and hold the *larger corporate* entity financially responsible. *Id.* at 418, 276 N.Y.S.2d 585, 223 N.E.2d 6. The corporate veil may also be pierced when a corporation is a "dummy" for its stockholders, who are "in reality carrying on the business in their personal capacities for purely personal rather than corporate ends". *Id.* at 419, 276 N.Y.S.2d 585, 223 N.E.2d 6. This type of veil piercing seeks to hold the individual stockholders personally liable.[4] *Id.* at 420, 276 N.Y.S.2d 585, 223 N.E.2d 6.

## C. Requirements for Pleading Fraud in Bankruptcy Cases

Two types of fraud can be charged in a Bankruptcy case. Claims of actual fraud fall under § 548(a)(1), where the scienter requirement is "actual intent to hinder, delay, or defraud." In contrast, claims of constructive fraud fall under § 548(a)(2) where intent is not a factor. The relevant factors in § 548(a)(2) are the transferor's financial condition and the sufficiency of the value provided by the transferee. The Amended Complaint alleges fraudulent conveyance under both § 548(a)(1) and § 548(a)(2).

Courts usually evaluate averments of fraud more liberally in the bankruptcy context than in other civil actions. *Wieboldt Stores, Inc. v. Schottenstein*, 94 B.R. 488, 498 (N.D.Ill.1988). In *Wieboldt*, both actual fraud and constructive fraud were charged in the context of a leveraged buyout ("LBO") transaction. The plaintiff in *Wieboldt* charged that the LBO was a fraudulent conveyance and that the directors had breached their fiduciary duties. The court held that the pleadings satisfied the Rule 9(b) requirements because the

---

**3.** In *Walkovszky*, the plaintiff, a tort victim, was injured by a taxicab owned by one of defendant's corporations. The plaintiff sought to hold the defendant personally liable for damages exceeding the amount paid by the insurer, on the theory that "the multiple corporate structure was an unlawful attempt to defraud members of the general public who might be injured by the cabs." *Id.* at 416, 276 N.Y.S.2d 585, 223 N.E.2d 6.

The defendant was a stockholder in ten such corporations, each of which owned two cabs. Furthermore, each cab carried the statutorily mandated minimum amount of liability insurance. The defendant, by properly incorporating and insuring each taxicab, had complied with the state law in all respects. *Id.* at 419–420, 276 N.Y.S.2d 585, 223 N.E.2d 6.

According to the court, the case involved "a rather common practice in the taxicab industry of vesting the ownership of a taxi fleet in many corporations, each owning only one or two cabs." *Id.* at 416, 276 N.Y.S.2d 585, 223 N.E.2d 6. In finding the complaint insufficient, the court noted that the multiple ownership practice was clearly legal, as the multiple corporations were formed pursuant to statutory authorization. *Id.* at 419, 276 N.Y.S.2d 585, 223 N.E.2d 6.

**4.** A cause of action seeking to impose corporate liability on a shareholder will lie when there are sufficiently particular allegations to the effect that the shareholder was merely using the corporate name to conduct personal business, was commingling funds or assets, perverting the privilege of doing business in a corporate form, or disregarding corporate formalities *Id.* at 420, 276 N.Y.S.2d 585, 223 N.E.2d 6.

pleadings recited supporting facts, explained in detail the events surrounding the tender offer and the LBO, described each defendant's participation in the LBO transaction, and described the effect of the LBO. The court noted:

Although the size and complexity of this case renders pleading difficult, Wieboldt has included enough information in its complaint and has stated its claims with sufficient clarity to advise each defendant or group of defendants of the claims made against them. Pleadings are not intended to supplant the process of discovery; nor is Wieboldt required to plead the evidence it plans to present to support its claims. Wieboldt's complaint adequately describes the specific injury Wieboldt seeks to redress and describes the legal theories upon which it bases its claims. For these reasons and because the complaint pleads sufficient facts to allow each defendant to prepare an effective answer or defense, defendants' motions to dismiss under Rule 9(b) are denied.

*Id.* at 498.

■ Judge Lifland, in *In re O.P.M.*, 32 B.R. 199, allowed greater liberality in the pleading of fraud in bankruptcy cases because "it is often the Trustee, a third party outsider to the fraudulent transaction, that must plead fraud on secondhand knowledge for the benefit of the estate and all of its creditors." *Id.* at 203. However, the trustee in *O.P.M.* was required to replead his claim because he included only two paragraphs of facts and had merely recited the statutory elements, such that the pleading "smack[ed] of multiple choice or menu pleading". *Id.* at 204. A complaint must do more than merely repeat the wording of a statute, and it must include some facts in support of the allegations. *Id.*

■ Judge Lifland also ruled that pleading fraud substantially "on information and belief" weighs in favor of requiring the pleadings to conform to the particularity requirements of Rule 9(b). *Id.* However, the particularity requirement is satisfied even in pleadings "on information and belief" if the allegations are accompanied by a statement of the facts upon which the belief is founded. *Id.*

## IV. ANALYSIS

■ The Amended Complaint charges actual fraud under § 548(a)(1), constructive fraud under § 548(a)(2); actual fraud and actual control on behalf of the Individual Defendants sufficient to pierce the corporate veil under §§ 272–276 of the New York DCL. The Amended Complaint further alleges either a nonfunctional or a nonexistent board of directors, although a board of directors existed "on paper," Cmplt. ¶ 79; interlocking directorates and financing, a transfer of assets for less than reasonably equivalent value, Cmplt. ¶¶ 62, 70, 72; and, knowledge of the Debtor's insolvency at the time of the transfer. Cmplt. ¶ 97.

The Amended Complaint satisfies the requirements of Rule 9(b). Following the rule stated in *O.P.M.*, 32 B.R. 199, the Trustee, pleading on the basis of secondhand knowledge, has pled more than two paragraphs of facts in support of his allegations, and has not merely restated the wording of the statute. Although the pleadings are based primarily "on information and belief," the particularity requirement is satisfied by the statements of fact upon which the belief is founded. Assuming the facts pled are accurate, then, in confluence with the policy of *Crystal*, 562 F.Supp. 422, the Trustee is seeking to redress a wrong, not merely to find one.

In addition, the Amended Complaint is clearly within the guidelines set out in *Wieboldt*, 94 B.R. 488, which relaxed the standard for pleading fraud in bankruptcy cases. The Trustee included sufficient information in the complaint to advise all Defendants of the claims against them; the complaint describes the specific injury and the legal theories upon which the claims are based.

■ The Amended Complaint has sufficiently stated a claim to litigate the propriety of piercing the corporate veil. Particular allegations with respect to holding the larger corporate entity financially responsible include the lack of a separate corporate existence. Particular allegations with respect to holding the Individual Defendants personally responsible include allega-

tions of commingling funds or assets, perverting the privilege of doing business in corporate form and the disregard of corporate formalities. The Amended Complaint clearly fulfills the pleading requirements set forth in *Walkovszky*.

## CONCLUSION

Plaintiff has sufficiently pled the elements of §§ 548(a)(1) & (a)(2), to satisfy the purposes of Rule 9(b), and to allow the Defendants to begin preparations to litigate on the merits. Accordingly, the Dismissal Motion is denied with respect to Counts 1, 2, 3, 4, 5, 6, and 7 of the Complaint.

Further, count 8 (for disallowance of any claims asserted by defendants), count 9 (for punitive damages), and count 10 (for breach of fiduciary duty) have been pled with sufficient specificity for Defendants to begin preparations for litigation on the merits. Any additional information necessary to the litigation may be obtained through use of the discovery process.

The Dismissal Motions are denied in all respects.

Trustee to settle an order consistent with this decision on five days notice and within ten days of the docket entry of this decision.