**In re WHITE METAL ROLLING AND STAMPING CORP.**

**Alan NISSELSON, Chapter 7 Trustee of White Metal Rolling and Stamping Corp., Plaintiff,**

v.

**DREW INDUSTRIES INCORPORATED, Leslie–Locke, Inc., Leslie Building Products, Inc., and Kinro, Inc., Defendants.**

96 Civ. 5859(JES).
Case No. 94 B 44615(SMB).
Adversary No. 96/8544A.

United States District Court,
S.D. New York.

March 25, 1998.

---

Brauner, Baron, Rosenzweig & Klein, L.L.P. (Mel P. Barkan, Michael J. Weitzner, of counsel), for Plaintiff.

Berlack, Israels & Liberman, L.L.P. (Steven E. Greenbaum, Stephen B. Selbst, of counsel), for Drew Industries Inc., Leslie–Locke, Inc., Leslie Building Products, Inc., and Kinro, Inc.

## MEMORANDUM OPINION AND ORDER

SPRIZZO, District Judge.

Pursuant to 28 U.S.C. § 157(d), defendants Drew Industries, Inc. ("Drew"), Leslie–Locke, Inc. ("Leslie"), Leslie Building Products, Inc. ("LBP"), and Kinro, Inc. ("Kinro") move for an order withdrawing the reference of the above-captioned adversarial proceeding from the bankruptcy court on the grounds that the resolution of certain tax issues will require substantial and material consideration of federal tax law. For the reasons set forth below, defendants' motion to withdraw the reference is denied.

### BACKGROUND

Debtor White Metal Rolling and Stamping Corp. (hereinafter "White Metal") is a New York corporation formerly engaged in the manufacture and sale of ladders and other aluminum products to retailers throughout the United States. See Defendants' Notice of Motion to Withdraw the Reference dated July 31, 1996, Exh. A ¶¶ 2, 5 (Complaint ("Compl.")). At all relevant times, White Metal was a wholly-owned subsidiary of defendant Leslie, which in turn was wholly owned by defendant Drew, see id., and both Leslie and White Metal were members of the Drew consolidated federal corporate income tax group (the "Drew Group"). See Defs.' Mem. at 3. As such, White Metal's taxable income and/or loss was required to be included in the Drew Group's consolidated federal income tax returns. See id.; Compl. ¶ 5.

During its initial taxable year as a member of the Drew Group in 1987,[1] White Metal earned taxable income that was included in the Drew Group's consolidated federal income tax return. See Defs.' Mem. at 3. In 1988 and every year thereafter, White Metal posted losses.[2] See id. During fiscal years 1988 and 1989, the Drew Group used these

---

1. At all relevant times, the Drew Group's fiscal year ended on August 31st. Thus, White Metal's first year as part of the Drew Group began in the fiscal year ending August 31, 1987. See Defs.' Mem. at 3 n. 1.

2. Exactly when White Metal's balance sheet first showed a negative net worth is disputed. Plaintiff Alan Nisselson ("Nisselson"), the bankruptcy trustee, contends that White Metal was insolvent by August 31, 1989. See Compl. ¶ 16. Defendants claim that White Metal first showed a negative net worth on August 31, 1990. See Defs.' Mem. at 4.

losses to offset taxable income earned by other members of the group. *See id.* at 4. However, the Drew Group claims it obtained no other "net" tax benefits as a "direct" result of White Metal's losses. *See id.*

From 1987 through August 31, 1990, in light of its continuing losses, Drew and Leslie contributed $6.3 million in cash to White Metal, which defendants claim was the net of certain minimal repayments by White Metal of "intercompany obligations." *See* Defs.' Mem. at 4. Sometime after August 1990, Drew and Leslie deemed their loans to and investments in White Metal worthless and took an approximately $7.3 million bad debt deduction and $3.9 million in deductions representing amounts advanced to White Metal in order to defray its expenses. *See id.;* 26 U.S.C. § 166. In addition, Leslie took a $3.26 million worthless stock deduction, that amount representing Leslie's tax basis in White Metal stock. *See* Defs.' Mem. at 4; 26 U.S.C. § 165.

On September 30, 1994, White Metal filed a voluntary petition for bankruptcy relief under Chapter 7 of the United States Bankruptcy Code (hereinafter the "Bankruptcy Code"). *See* Defs.' Mem. at 4; Compl. ¶ 1. On or about May 3, 1996, White Metal's bankruptcy trustee, plaintiff Alan Nisselson ("Nisselson"), brought this adversarial proceeding in the bankruptcy court, naming Drew, Leslie, LBP,[3] and Kinro[4] as defendants. *See* Defs' Mem. at 5. Nisselson seeks to void alleged preferential and/or fraudulent transfers made to Drew, Leslie, and LBP and to recover income tax benefits relating to White Metal's net operating losses ("NOLs").[5]

*The Adversarial Proceeding*

The complaint's first claim for relief alleges that the transfer of $156,937.68 on December 31, 1993, and $144,638.00 on March 31, 1994, from then-insolvent White Metal to Leslie to repay outstanding loans occurred within one year of White Metal's filing its bankruptcy petition and thus constitutes voidable preferential transfers under Section 547(b) of the Bankruptcy Code.[6] *See* Compl. ¶¶ 10–14. The second claim for relief alleges that certain transfers of capital from White Metal to Leslie constitute voidable preferential transfers under Sections 270–81 of the New York Debtor and Creditor Law ("N.Y.D.C.L.") and Section 544 of the Bankruptcy Code, *see id.* ¶¶ 15–23, and actual or constructive fraud upon White Metal's creditors. *Id.* Likewise, the third claim for relief contends that similar payments and transfers of property from White Metal to Drew and LBP are also voidable as preferential and/or fraudulent transfers under New York law and the Bankruptcy Code. *See id.* ¶¶ 24–32. The fourth claim alleges that certain monthly management fees totaling $457,000.00, paid by White Metal to Drew for the period beginning after August 31, 1989 (when Nisselson claims White Metal first became insol-

---

3. Nisselson claims that LBP, a newly-formed and wholly-owned subsidiary of Drew, owns 100% of Leslie's stock, and will therefore have successor liability for any judgment rendered against Leslie. *See* Compl. ¶ 4.

4. Nisselson claims that Kinro, as a wholly-owned subsidiary of Drew and part of the Drew Group, received most of the tax benefits from White Metal's net operating losses. *See* Compl. ¶ 5.

5. The complaint contains seven claims brought pursuant to Sections 541, 542(a), 544, 547(b), 548–51 and 502(d) of the Bankruptcy Code, Federal Rule of Bankruptcy Procedure 7001(1), and Sections 270–81 of the New York Debtor and Creditor Law. *See* Compl. ¶¶ 6, 21.

6. Section 547(b) provides:

Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;
(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
(3) made while the debtor was insolvent;
(4) made—
(A) on or within 90 days before the date of the filing of the petition; or
(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
(5) that enables such creditor to receive more than such creditor would receive if—
(A) the case were a case under chapter 7 of this title;
(B) the transfer had not been made; and
(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b) (1997).

vent), were preferential and/or fraudulent transfers in violation of Sections 270–81 of the N.Y.D.C.L. and Section 544 of the Bankruptcy Code. *See id.* ¶¶ 32–39. The fifth claim asserts fraud, fraudulent conveyance, breach of fiduciary duty and unjust enrichment claims stemming from the Drew Group's use of White Metal's NOLs for federal and state tax benefits of approximately $3,962,413.00 in violation of, *inter alia,* Sections 270–81 of the N.Y.D.C.L. and Sections 522(b) and 547–48 [7] of the Bankruptcy Code. *See id.* ¶¶ 40–52. The sixth claim alleges that by their uncompensated use of its NOL's during White Metal's insolvency, the Drew Group breached its fiduciary duty to White Metal's creditors and was unjustly enriched of more than $3,962,413.00, which Nisselson seeks to recover pursuant to Sections 550 and 551 of the Bankruptcy Code. *See id.* ¶¶ 53–57. The seventh, and final, claim alleges that by taking worthless stock and bad debt deductions relating to its investment in White Metal, the Drew Group deprived White Metal of the use of its NOLs and appropriated this property without compensation, thus constituting a voidable transfer under Sections 270–81 of the N.Y.D.C.L. and Sections 544 and 548 of the Bankruptcy Code. *See id.* ¶¶ 58–64.

### DISCUSSION

The sole issue before the Court on defendants' motion to withdraw the reference [8] is whether or not resolution of the claims raised in the adversarial proceeding requires the "substantial and material consideration" of federal income tax law. *See In re Ionosphere Clubs, Inc.,* 922 F.2d 984, 995 (2d Cir.1990), *cert. denied,* 502 U.S. 808, 112 S.Ct. 50, 116 L.Ed.2d 28 (1991). While de-

fendants' briefs are replete with a myriad of arguments with respect to the complexities of the Internal Revenue Code's NOL and consolidated return provisions and why the bankruptcy court is ill-equipped to deal with these issues, the Court finds that this case is controlled by the Second Circuit's decision in *In re Prudential Lines, Inc.,* 928 F.2d 565 (2d Cir.), *cert. denied,* 502 U.S. 821, 112 S.Ct. 82, 116 L.Ed.2d 55 (1991).

In *Prudential Lines,* the Second Circuit explained that while the nature and extent of a "debtor's interest in property is determined by applicable non-bankruptcy law," *id.* at 569 (citations omitted), the question of whether that interest should be "included in the property of the debtor's estate is determined by bankruptcy law." *Id.* (citations omitted). In this case, since the trustee contends that White Metal's pre-petition NOLs are property to be included in the debtor's estate, the question of whether or not White Metal's pre-petition NOLs can properly be included as part of the debtor's estate must likewise be determined using bankruptcy law.

In *Prudential Lines,* the Second Circuit further noted that where a parent and its subsidiary have entered into an express or implied agreement as to the allocation of the subsidiary's NOL, "as a matter of state corporation law the parties are free to adjust among themselves the ultimate tax liability.... However, consent [ ] to the filing of a consolidated tax return ... cannot be construed to include the transfer of a valuable asset without further consideration." *Prudential Lines,* 928 F.2d at 570 (citations omitted). Here, defendants entered into a "Tax Matters Agreement" which included White Metal and specifically addressed the use of its NOLs. *See* Affidavit of Mel P.

---

**7.** Section 548, entitled "Fraudulent transfers and obligations," provides, in relevant part:

> (a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—
> (2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
> (B)(i) was insolvent on the date that such transfer was made or such obligation was in-

curred, or became insolvent as a result of such transfer or obligation ...

11 U.S.C. § 548(a)(2)(A)–(B)(i) (1997).

**8.** Section 157(d) provides, in relevant part:

> The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

28 U.S.C. § 157(d) (1997).

Barkan in Opposition to Defendants' Motion to Withdraw the Reference dated Sept. 18, 1996 ("Barkan Aff.") Exh. B at §§ 3.02–3.03 (Tax Matters Agreement By and Between Drew Industries Inc. and Leslie Building Products, Inc. dated July 29, 1994) (hereinafter the "Tax Matters Agreement"). Although the Tax Matters Agreement is dated July 29, 1994 (almost four years after defendants' claim White Metal became insolvent and little more than two months before White Metal filed its' petition for bankruptcy relief), it purports to confirm, in relevant part:

> the *existing understanding* between Drew, Leslie–Locke and White Metal with respect to the accounting for Leslie–Locke's and White Metal's federal, state and local tax provisions for all periods *prior in and including* [July 29, 1994] ... (b) any federal income tax benefit recognized by the Drew Affiliated Group (other than Leslie–Locke and White Metal) and attributable to members of the Leslie Building Products Affiliated Group [which includes White Metal] shall be recorded on the financial statements of Leslie–Locke and White Metal as a reduction of intercompany indebtedness.

*Id.* § 3.05 (emphasis added).

Further, with respect to NOLs incurred before July 29, 1994, that are carried back to a previous taxable period of the Drew Group, the Tax Matters Agreement provides that, "Drew shall pay Leslie Building Products Affiliated Group [which includes White Metal] an amount equal to the Tax Benefit actually obtained by the Drew Affiliated Group ...," Tax Matters Agreement § 3.02(b), except such payment need not be made "to the extent it is duplicative of any payments made pursuant to any other provision of this Agreement." *Id.*

Thus, the sole issue to be determined by the bankruptcy court is whether the debtor received adequate consideration for the use of its NOLs. Clearly, the bankruptcy court can decide whether the Tax Matters Agreement encompassed the NOLs at issue

here, and to what extent, if any, White Metal received compensation either through the reduction of intercompany debt or as payments for tax benefits enjoyed by the Drew Group, without the substantial and material consideration of non-bankruptcy law. *See* 11 U.S.C. § 547(c)(1)(A) (trustee may not avoid preferential transfer "intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor"); *see also* 11 U.S.C. § 548(a)(2)(A) (trustee may avoid fraudulent transfer if debtor "received less than a reasonably equivalent value in exchange for such transfer or obligation"); 11 U.S.C. § 550(b)(1) (trustee may not recover from "transferee that takes for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided"). This is an issue which bankruptcy courts frequently resolve and which does not merit withdrawal of this adversarial proceeding to the district court.[9]

### CONCLUSION

In light of the foregoing, defendants' motion to withdraw the reference to the bankruptcy court is denied.

It is **SO ORDERED.**

---

9. Although the Court has fully considered defendant's arguments that *Prudential Lines* is factually inapposite to this proceeding, the Court is not persuaded that these factual differences detract from the dispositive nature of that precedent.