### In re WHITE METAL ROLLING AND STAMPING CORP., Debtor.

### Alan NISSELSON, Chapter 7 trustee of the White Metal Rolling and Stamping Corp., Plaintiff,

v.

### DREW INDUSTRIES, INCORPORATED, Leslie–Locke, Inc., Leslie Building Products, Inc. and Kinro, Inc., Defendants.

**Bankruptcy No. 94 B 44615(SMB).
Adversary No. 96/8544A.**

United States Bankruptcy Court,
S.D. New York.

July 14, 1998.

---

Brauner Baron Rosenzweig & Klein, LLP, New York City, Mel P. Barkan, of counsel, for Plaintiff.

Gilbert, Segall & Young, LLP, New York City, Jeffrey E. Livingston, of counsel, for Defendants.

## MEMORANDUM DECISION REGARDING DEFENDANTS' MOTION TO DISMISS

STUART M. BERNSTEIN, Bankruptcy Judge.

At all relevant times, the debtor and all but one of the defendants joined together in filing consolidated federal income tax returns. Prior to bankruptcy, the profitable members of the affiliated group used the debtor's net operating losses ("NOLs") to generate refunds or reduce their tax obligations. The debtor's trustee commenced this adversary proceeding to recover the value of the debtor's NOLs and other tax benefits allegedly appropriated by the group members for their own benefit and use. In addition, the trustee seeks to avoid and recover numerous non-tax related transfers.

The defendants have moved to dismiss the majority of the complaint. For the reasons that follow, all of the tax-related claims are dismissed for legal insufficiency. Similarly, the non-tax intentional fraudulent transfer claims are also dismissed. However, the portion of the defendants' motion directed at the non-tax constructive fraudulent transfer claims is denied. Finally, the trustee is granted leave to replead the dismissed claims.

## BACKGROUND

As the matter is before me on a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, made applicable to this adversary proceeding by Rule 7012(b) of the Federal Bankruptcy Rules, the allegations of fact contained in the complaint must be accepted as true. The debtor filed this chapter 7 case on September 7, 1994; Alan Nisselson, the plaintiff, is the trustee of the debtor's estate. (Complaint ¶ 1.) The debtor is a New York corporation with offices formerly located in Atlanta, Georgia.

(*Id.* at ¶ 2.) Prior to filing, the debtor was engaged in the manufacture and sale of ladders and other aluminum products throughout the United States. (*Id.*) The debtor was the wholly-owned subsidiary of defendant Leslie Locke, Inc. ("Leslie"), a Georgia corporation, and Leslie was the wholly-owned subsidiary of defendant Drew Industries, Inc. ("Drew"), a Delaware corporation. (*Id.* at ¶¶ 2–4.) In May 1994, Leslie distributed the debtor's shares to its newly-formed wholly-owned subsidiary, Leslie Building Products, Inc. ("LBP"), and in July 1994, Drew spun off its LBP shares to its own shareholders. (*Id.* at ¶ 4.) The remaining defendant, Kinro, Inc. ("Kinro"), was also a wholly-owned subsidiary of Drew. (*Id.* at ¶ 5.) During the period in question, the debtor, Drew, Leslie and Kinro (collectively, the "Group") filed consolidated federal tax returns. (*See id.*)

### A. The Complaint

The trustee alleges seven claims for relief. The motion challenges all but the first for legal sufficiency. A portion of the complaint asserts avoidance claims based on the transfer of the debtor's non-tax property. The main thrust of the complaint, however, concerns the defendants' use of the debtor's NOLs and other tax benefits without compensating the debtor. For the sake of completeness, the following summarizes the seven claims:

1. Against Leslie to recover two preferential transfers in the aggregate amount of $301,575.68 made by the debtor to Leslie within one year of bankruptcy pursuant to 11 U.S.C. § 547;

2. Against Leslie to recover these same payments, additional transfers in the aggregate amount of $1,902,573.78 made to Leslie within six years of bankruptcy, and any setoffs of intercompany indebtedness under the Tax Matters Agreement, on the grounds of (a) breach of fiduciary duty to the debtor and its creditors and (b) preferential and actual and constructive fraudulent transfers under New York state law and 11 U.S.C. § 544(b);

3. Against Drew and LBP [1] to recover two transfers in the aggregate amount of $453,588.00, and any setoffs of any inter-company indebtedness under the Tax Matters Agreement, on the grounds of (a) breach of fiduciary duty to the debtor and its creditors and (b) preferential and actual and constructive fraudulent transfers under New York state law and 11 U.S.C. § 544(b);

4. Against Drew and LBP to recover management fees in the aggregate sum of $457,000.00 on the grounds of (a) failure of consideration, (b) breach of fiduciary duty to the debtor and its creditors and (c) preferential and actual and constructive fraudulent transfers under New York state law and 11 U.S.C. § 544(b);

5. Against all defendants for the use of the debtor's NOLs in the aggregate amount of $4,707.413.00 on the grounds of (a) breach of fiduciary duty to the debtor and its creditors, (b) unjust enrichment, (c) preferential and actual and constructive fraudulent transfers under New York state law and 11 U.S.C. § 544(b); (d) failure of consideration; (e) lack of good faith and (f) insider preferences based upon the use of NOLs aggregating $346,037.00 within one year of the petition date;

6. Against all defendants for (a) breach of fiduciary duty to the debtor and its creditors and (b) unjust enrichment on the ground that the use of the debtor's NOLs was the "functional equivalent" of a distribution of capital; and

7. Against all the defendants based upon the fact that Drew caused Leslie to take a worthless stock deduction in the amount of $3,261,863.00 on account of its interest in the debtor's shares and a bad debt deduction in the amount of $1,184,-034.00 on account of the debtor's unpaid debt, and Drew similarly took its own bad debt deduction in the amount of $6,145,-735.00, on the grounds that (a) the defendants prevented the debtor from taking these deductions, (b) the defendants received approximately $3.6 million in federal income tax benefits, and deprived the debtor of any future use of the NOLs in breach of their fiduciary duties to the debtor's creditors, (c) the defendants were unjustly enriched, and (d) the worthless stock deduction "was the equivalent of a transfer of property of White Metal having a value of approximately $1,100,000.00" which the trustee may avoid and recover under New York state and bankruptcy law.

## B. The Motion to Dismiss

In lieu of answering, the defendants moved to dismiss the majority of the complaint. The defendants contend that all claims based upon the Group's use of the debtor's NOLs as well as the taking of the worthless stock and bad debt deductions fail to state claims upon which relief can be granted. The defendants also maintain that the fraudulent transfer claims fail to satisfy the pleading requirements contained in Rule 9(b) of the Federal Rules of Civil Procedure, and are barred by Georgia's statute of limitations which, the defendants argue, is applicable. Since the complaint pleads only violations of New York law, and the choice of law issue raised by the defendants cannot be resolved on a motion to dismiss, that portion of the motion has been withdrawn.

Certain claims in the complaint were not targeted for dismissal. These included the entire first claim which is based upon 11 U.S.C. § 547. In addition, the defendants' papers did not argue that the breach of fiduciary duty claims relating to the non-tax transfers should be dismissed. Hence, these claims will not be addressed.

## C. The Motion To Withdraw the Reference

At the same time that the defendants moved to dismiss most of the claims in the complaint, they also moved before the district court to withdraw the reference of this adversary proceeding. They argued that resolution of the trustee's tax-related claims would require substantial interpretation of non-bankruptcy federal law—i.e., the Internal Revenue Code. See 28 U.S.C. § 157(d). The trustee opposed the motion, and District Judge John E. Sprizzo denied it. See Nissel-

---

1. The claims against LBP are based on the theo-ry of successor liability. (Complaint ¶ 4.)

son v. Drew Indus., Inc. (In re White Metal Rolling & Stamping Corp.), 217 B.R. 981 (S.D.N.Y.1998). Citing *In re Prudential Lines, Inc.*, 928 F.2d 565 (2d Cir.), *cert. denied*, 502 U.S. 821, 112 S.Ct. 82, 116 L.Ed.2d 55 (1991), the district court stated that bankruptcy law determines whether the debtor's pre-petition NOLs are includable in the debtor's estate. *In re White Metal Rolling & Stamping Corp.*, 217 B.R. at 984. Noting that the parties had entered into a tax allocation agreement,[2] the district court concluded that "the sole issue to be determined by the bankruptcy court is whether the debtor received adequate consideration for the use of its NOLs." *Id.* at 985. The bankruptcy court could decide, without extensively analyzing the federal tax laws, whether the Tax Matters Agreement encompassed the NOLs, and what compensation, if any, White Metal received for their use. *Id.*

Following Judge Sprizzo's denial of the motion, the parties disputed the effect of Judge Sprizzo's decision on other issues in the case, and submitted letter briefs. The trustee argued that the district court effectively rejected the defendants' motion to dismiss the NOL-related claims, confirmed that the NOLs are property of the debtor's estate, and concluded that the parent company is obligated to reimburse the subsidiary for any use of the subsidiary's NOLs. (*See Letter from Mel P. Barkan to the Court*, dated May 11, 1998, at 3–4.) In response, the defendants noted the irony of the trustee's argument that Judge Sprizzo had decided the very issues that the trustee had insisted, before Judge Sprizzo, should be decided by this Court. (*Letter from Jeffrey E. Livingston to the Court*, dated May 18, 1998, at 2.) The defendants also pointed out the limited nature of the issue before Judge Sprizzo, and contended that his discussion of *Prudential Lines* and his references to the Tax Matters

Agreement merely illustrated that the ultimate issue would be determined under bankruptcy and non-tax law. (*Id.* at 5–7.)

The trustee's suggestion that Judge Sprizzo decided the legal sufficiency of the tax-related claims is disingenuous. The sufficiency of the complaint was not before Judge Sprizzo. At most, the decision states that under *Prudential Lines*, and without regard to the tax laws, the debtor's operating losses are property of the estate to the extent that they existed on the petition date. Neither the district court nor *Prudential Lines* addressed what rights, if any, arise from the affiliated group's prepetition use of a debtor's NOLs, or decided that the debtor is entitled to compensation for that use. To the contrary, with the possible exception of the effect of the Tax Matters Agreement, the complaint does not set forth facts that would obligate the members of the Group to compensate the debtor for the use of its NOLs.

## DISCUSSION

### A. Standards Governing the Trustee's Motion to Dismiss

A court may dismiss a complaint under Fed.R.Civ.P. 12(b)(6) only if it appears beyond doubt that the plaintiff would not be entitled to any type of relief, even if he proved the factual allegations in his complaint. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Harsco Corp. v. Segui*, 91 F.3d 337, 341 (2d Cir. 1996); *Cohen v. Koenig*, 25 F.3d 1168, 1171–72 (2d Cir.1994); *Sykes v. James*, 13 F.3d 515, 519 (2d Cir.1993), *cert. denied*, 512 U.S. 1240, 114 S.Ct. 2749, 129 L.Ed.2d 867 (1994). The court must assume the truth of those factual allegations, *Harsco Corp. v. Segui*, 91 F.3d at 341, and draw all reasonable inferences in the plaintiff's favor. *Scheuer v.*

---

2. Drew and LBP entered into a Tax Matters Agreement at the time of the 1994 spin off. The agreement states that it confirms the existing understanding that "any federal income tax benefit recognized by the [Drew Group] (other than [Leslie and the debtor]) and attributable to members of the [LBP Group] shall be recorded on the financial statements of [Leslie and the debtor] as a reduction of intercompany indebtedness." (Tax Matters Agreement § 3.05.) In other words,

a member of the Drew Group (other than the debtor) who obtained a *federal* tax benefit by using the debtor's NOL is required to compensate the debtor by crediting the amount of the tax benefit against amounts owed by the debtor to that member.

While the complaint refers to the Tax Matters Agreement, it does not attach or incorporate it, and with one exception noted below, does not purport to assert any claims under it.

*Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Luedke v. Delta Air Lines, Inc.* 159 B.R. 385, 389 (S.D.N.Y.1993); *Raine v. Lorimar Prods., Inc.*, 71 B.R. 450, 453 (S.D.N.Y.1987). In addition to the complaint itself, the court may consider the contents of any documents attached to the complaint or incorporated by reference, matters as to which it can take judicial notice, and documents in the non-moving party's possession or which it knew of or relied on in connection with its complaint. *Brass v. American Film Technologies, Inc.*, 987 F.2d 142, 150 (2d Cir.1993); *Bonwit Teller, Inc. v. Jewelmasters, Inc. (In re Hooker Invs., Inc.)*, 162 B.R. 426, 430 (Bankr.S.D.N.Y.1993).

## B. The Relevant Tax Principles

This case involves the interplay between the principles governing NOLs and consolidated returns, and it is worthwhile reviewing some of the pertinent concepts. NOL carrybacks and carryovers are a form of income averaging that permit a taxpayer to use current losses to reduce taxable income in prior and future years. *See United States v. Foster Lumber Co.*, 429 U.S. 32, 42, 97 S.Ct. 204, 50 L.Ed.2d 199 (1976). Under 26 U.S.C. § 172(b), a taxpayer must first carry an NOL back three years and then carry it forward fifteen years. 26 U.S.C. § 172(b).[3] Alternatively, a taxpayer may affirmatively elect to relinquish the carryback period, and carry the entire NOL forward to future periods.[4] 26 U.S.C. § 172(b)(3)(C).

Assuming that the taxpayer does not make the election to waive the carryback, the NOL rules are mandatory. *See* Jacob Mertens, Jr., *Mertens Law of Federal Income Taxation* § 29.09 (1994) (*"Mertens"*). In other words, the taxpayer must carryback the NOL three years, then two years and then one year. If the prior income absorbs the entire NOL, there is nothing left to carryover to offset against future earnings. *Lone*

*Manor Farms, Inc. v. Commissioner*, 61 T.C. 436, 441, 1974 WL 2698 (1974), *aff'd without op.*, 510 F.2d 970 (3d Cir.1975); *Newton v. Commissioner*, 57 T.C. 245, 247–48, 1971 WL 2586 (1971); *see Mertens* § 29.09. In determining the availability of the NOL to future years, the court must deem any NOL deduction that would have been allowed to have actually been allowed, even if the taxpayer never claimed it. *Lone Manor Farms, Inc. v. Commissioner*, 61 T.C. at 441–42.

In this case, the use of the debtor's NOLs is affected by its participation in the Group's consolidated returns. A family of corporations that satisfies the Internal Revenue Code's criteria for affiliation may file a consolidated tax return. *See* 26 U.S.C. § 1501.[5] All members of the affiliated group during the taxable year must consent to the consolidated return regulations, and the filing of the consolidated return constitutes that consent. *Id.* The members of the affiliated group are severally liable for the tax computed on the group's consolidated income. Treas. Reg. § 1.1502–6(a); 33A Am. Jur. 2d, *Federal Taxation* ¶ 5718 (1996). The parent becomes the sole agent for each member in all matters relating to the consolidated return year. Treas. Reg. § 1.1502–77(a); 33A Am. Jur. 2d, *Federal Taxation* ¶ 5719 (1996).

The consolidation provisions in the tax law do not otherwise affect the substantive rights of the members. *See In re Prudential Lines, Inc.*, 928 F.2d at 570. The members are free to allocate the tax benefits and burdens among themselves, *id.* at 570, and the agreement will control the members' rights, *inter se,* in the absence of overreaching or breach of fiduciary duty. *In re Franklin Sav. Corp.*, 159 B.R. 9, 30 (Bankr. D.Kan.1993), *aff'd,* 182 B.R. 859 (D.Kan. 1995); *see Case v. New York Central R.R. Co.*, 15 N.Y.2d 150, 256 N.Y.S.2d 607, 204

---

**3.** Section 172 of the Internal Revenue Code was amended in 1997 to change the carryback and carryover periods to two years and twenty years, respectively. These amendments do not affect the years in question in this adversary proceeding.

**4.** For example, a change in tax rates may make it economically advantageous to carryover the en-

tire NOL even though the taxpayer had taxable income during the carryback period. *See* Jack Crestol, *et al., The Consolidated Tax Return* ¶ 5.02[8][b], 5–94–95 (5th ed.1997).

**5.** There is no dispute that the Group satisfied these criteria.

N.E.2d 643, 647 (1965) (upholding tax allocation agreement under which profit subsidiary was required pay loss parent 93% of the tax savings realized by using the loss parent's NOLs). The tax allocation agreement does not, however, alter each member's liability to the Government for the entire tax. Treas. Reg. § 1.1502–6(c).

Assuming that the affiliated group's membership does not change, NOLs are computed and applied on a consolidated basis in accordance with section 172 of the Internal Revenue Code. Treas. Reg. § 1.1502–21(b)(1).[6] In other words, the parent has no discretion; the consolidated NOL is applied to the prior years in the statutorily-mandated order, and then carried forward only if the prior years' consolidated income does not fully absorb it. This process necessarily confers a benefit on the profitable group members. For example, carrying back the NOL may generate a refund of the taxes that they paid during the carryback period. Since tax reporting on a consolidated basis does not affect the group members' rights *inter se,* the question becomes what rights, if any, does the loss member have in the refund, or more generally, against the profitable members who benefit from the application of its NOL. The trustee's complaint brings these issues to the fore.

## C. The Trustee's Claims

### 1. Breach of Fiduciary and Unjust Enrichment Claims

The trustee makes essentially three claims with respect to the NOLs and other tax attributes. The fifth and sixth claims charge that one or more of the defendants breached their fiduciary duty and were unjustly enriched by using the debtor's NOLs without paying compensation to the debtor. The seventh claim, which is not based upon the use of the NOLs, makes two different claims. First, Drew and Leslie deprived the debtor of the worthless stock and bad debt deductions that they took for themselves. Second, Leslie destroyed the debtor's NOL when it took a worthless stock deduction. I will consider these claims in turn.

### a. Claims Based on the Use of the NOLs

■ It is beyond peradventure that NOL carrybacks and carryovers are property of the estate of the loss corporation that generated them. *See In re Prudential Lines, Inc.,* 928 F.2d at 571–73. This principle, however, only begins the inquiry. Although the NOL belongs to the loss corporation, its value to the loss corporation and its creditors depends upon the loss corporation's ability to use the NOL to reduce its past or future tax liabilities. *In re Coral Petroleum, Inc.,* 60 B.R. 377, 385–86 (Bankr.S.D.Tex.1986).[7]

■ In the absence of a tax allocation agreement, principles of unjust enrichment dictate that a loss corporation is entitled to receive the refund generated by the application of its NOL carryback to reduce the amount of income tax that it paid during the carryback year. *See, e.g., Capital Bancshares, Inc. v. United States,* 957 F.2d 203, 208 (5th Cir.1992); *In re Bob Richards Chrysler–Plymouth Corp.,* 473 F.2d 262, 265 (9th Cir.), *cert denied,* 412 U.S. 919, 93 S.Ct. 2735, 37 L.Ed.2d 145 (1973); *United States v. Bass Fin. Corp.,* No. 83 C 706, 1984 U.S. Dist. LEXIS 17384, at *11–12 (N.D.Ill. Apr. 20, 1984); *In re Franklin Sav. Corp.,* 159 B.R. at 29; *United States v. Revco D.S., Inc. (In re Revco D.S., Inc.),* 111 B.R. 631, 638 (Bankr.N.D.Ohio 1990); *FDIC v. Brandt (In re Florida Park Banks, Inc.),* 110 B.R. 986, 989 (Bankr.M.D.Fla.1990). Here, if the debtor had generated an NOL which was carried back to reduce the debtor's taxable income in an earlier year, the debtor would be entitled to the resulting refund.

---

**6.** Treas. Reg. § 1.1502–21 was removed in 1996, and replaced by a temporary regulation, § 1.1502–21T.

**7.** The *Coral* court also hypothesized that the NOL carryover would have value if it could be marketed to a profitable corporation, and survive under the Internal Revenue Code's rules that prevent trafficking in losses. 60 B.R. at 386. The complaint does not allege that Drew or Leslie failed to market the debtor's NOLs. Further, it is not clear if marketability is an asset of the subsidiary that generated the loss or of the parent that owns its stock.

■ The right to the refund is limited, however, to the amount of tax that the loss corporation paid during the carryback year. The loss corporation has no right to the excess, and has no rights against the other affiliated group members who benefit from the carryback. In the seminal case, *Jump v. Manchester Life & Cas. Management Corp.*, 579 F.2d 449 (8th Cir.1978), the parent carried back an insolvent subsidiary's NOL, generating a refund of $811,450.36. During the carryback period, the subsidiary had paid taxes, but due to prior NOL-generated refunds, it had received all but $30,250.00 of taxes previously paid. On appeal, the parties did not contest the subsidiary's entitlement to $30,250.00 from the refund; the issue concerned the right to the balance of the $811,-450.36. The subsidiary claimed the balance, and contended that the parent had converted it in breach of its fiduciary duty. *Id.* at 451.

In rejecting the subsidiary's claim, the Court put to one side the question of ownership, and focused instead on the value of the NOL to the subsidiary. The NOL had value only to the extent that the subsidiary could use it to offset future income or bargain with other members of the affiliated group for its use. *Id.* at 453. Since the subsidiary was undergoing liquidation, the NOL had no carryover value because the subsidiary had no prospect of future income. *Id.* Further, the subsidiary had no bargaining leverage because it had consented to the filing of the consolidated return and the governing regulations, and the use of the NOLs was presumably consistent with those rules. *Id.* at 453–54. Applying Missouri law, the Court concluded that because the NOL had no value to the subsidiary, no basis existed to reward the subsidiary. Its losses simply had the fortuitous effect of permitting the profitable members to recover the taxes that they had paid. *Id.* at 454.

■ *Jump* supports the more general proposition that the profitable members of the affiliated group do not breach a fiduciary duty or incur liability on a theory of unjust enrichment by using the loss subsidiary's NOLs which the subsidiary cannot itself use. *See Meyerson v. El Paso Natural Gas Co.*, 246 A.2d 789, 793–94 (Del.Ch.1967) (decided under Delaware law); *In re Coral Petroleum, Inc.*, 60 B.R. at 389–90; *In re All Prods. Co.*, 32 B.R. 811, 814 (Bankr.E.D.Mich.1983); *cf. Western Pac. R.R. Corp. v. Western Pac. R. Co.*, 197 F.2d 994, 1004 (9th Cir.1951) (common officers of loss parent and profit subsidiary had no duty to exact "tribute" from the profit subsidiary based on its use of the parent's losses to offset income), *vacated and remanded on other grounds*, 345 U.S. 247, 73 S.Ct. 656, 97 L.Ed. 986, *pet. for reh'g denied*, 206 F.2d 495 (9th Cir.), *cert. denied*, 346 U.S. 910, 74 S.Ct. 242, 98 L.Ed. 407 (1953). Further, if the loss member cannot use the NOL for its own benefit, the affiliated group's common officers are under a fiduciary duty to use the loss to offset the income of the other members of the affiliated group. *See Western Pac. R.R. Corp. v. Western Pac. R. Co.*, 197 F.2d at 1004. While the group can agree among themselves to pay the entire refund to the loss corporation, *see Case v. New York Central R.R. Co.*, 256 N.Y.S.2d 607, 204 N.E.2d at 646–47, in the absence of such an agreement, the loss corporation that cannot use its NOL for its own benefit may not complain if another group member uses it for its benefit.

■ Applying these principles to the present dispute, the trustee's complaint fails to state a claim for breach of fiduciary duty[8] or unjust enrichment based upon the use of the debtor's NOLs.[9] To state such a claim, the complaint must allege facts showing that the NOLs had value to the debtor. The complaint contains only one paragraph that makes any allusion to the value of the NOLs:

41. One of White Metal's assets was its existing, current and future net operating losses ("NOLs") which were capable of being utilized to offset federal and state income taxes attributable to current earnings as well as carried back to obtain a refund of taxes paid in prior periods and to

---

8. I assume for the purpose of the motion to dismiss that Drew and the other members of the Group owed fiduciary duties to the debtor and its creditors.

9. The parties have not distinguished between the use of federal and state tax benefits. Accordingly, I have applied the same rules to both.

the extent not carried back, carried forward to offset future taxable income and thereby to reduce the payment of future taxes.

These are not allegations of fact, but conclusions of law. The complaint does not allege that the debtor had prior or current taxable income that could have been offset by carrying back the NOLs used by the defendants. Nor does the trustee allege that the debtor realized taxable income at any time prior to the bankruptcy, and could have carried the NOLs forward to reduce that taxable income. Finally, the trustee does not allege—and there is no basis to infer—that the debtor has any prospect for future income. The debtor is undergoing liquidation and no longer operates.

In addition, the mandate of 26 U.S.C. § 172 forecloses the trustee's implicit argument that the Group could have held off using the debtor's NOLs, and by using them, deprived the debtor and its estate of the ability to carryover the NOLs for use in future periods. The Group was not free to withhold application of NOLs to prior losses, and instead, maintain them in an "NOL bank" for use by the debtor in the event it turned a profit in the future.[10] Under the tax law, the Group had to first carry each year's NOL back three years, then two years and then one year; if that exhausted the NOL, there was nothing left to carryover. Even if the Group declined to carryback the debtor's NOLs to reduce prior taxable income, the Internal Revenue Service would nevertheless deem the NOLs to have been carried back in determining whether they had been exhausted. Thus, the Group would lose them if it did not use them.

Additionally, the NOLs had no value as a bargaining chip with the other members of the Group. As the *Jump* court observed, the members of the Group—including the debtor—consented to the filing of consolidated tax returns, and presumably, the use of the NOLs was consistent with past practice. The members had already made their bargain by entering into the tax allocation agreement subsequently memorialized in the Tax Matters Agreement. If the debtor did not receive what was due it under this agreement, as the complaint hints, (*see* Complaint ¶ 49), it may have a claim based on breach of contract. Beyond what the Tax Matters Agreement may give it, the complaint fails to allege facts suggesting that the NOLs had value to the debtor. Accordingly, the complaint fails to state legally sufficient breach of fiduciary duty and unjust enrichment claims based upon the members' use of the NOLs.

### b. The Worthless Stock and Bad Debt Claims

■ The trustee's seventh claim alleges that during the year ending August 31, 1990, Leslie took a worthless stock deduction for its stock in the debtor, *see* 26 U.S.C. § 165(g), and Leslie and Drew took bad debt deductions for the debts owed to them by the debtor. *See id.* § 166. (Complaint ¶ 59.) The debts were, in fact, equity, (*id.* at ¶ 60), and this presumably implies that the bad debt deductions were actually worthless stock deductions. In any event, Drew, Leslie and Kinro received approximately $3.6 million in federal income tax benefits through these deductions, (*id.* at ¶ 61), deprived the debtor "of its utilization of these tax benefits and lost its own ability to take these tax deductions," (*id.*), and deprived the debtor of the use of its NOLs. (*Id.* at ¶ 62.) The trustee contends that by these acts, Drew, Leslie and Kinro breached their fiduciary duty to the creditors of the debtor and were unjustly enriched in the amount of $3.6 million. (*Id.* at ¶ 63.)

The trustee's theory is attenuated and without merit. The right to take the worthless stock and bad debt deductions belonged, respectively, to Leslie, the shareholder, and Drew, the creditor. It did not belong to the debtor. The result would be the same if the debts were recast as equity. Accordingly, the trustee was not deprived of these deductions or the related tax benefits.

The worthless stock deduction did have the collateral effect of reducing the value of any

---

**10.** The trustee does not allege that Drew, as the agent for the Group, breached any duty by not

electing to waive the carryback each tax year, and carryover that year's NOLs into the future.

NOL carryover owned by the debtor to zero. *See In re Prudential Lines, Inc.,* 928 F.2d at 574. This, however, did not deprive the debtor of anything of value because the debtor had no prospect of future income. *See Official Committee of Unsecured Creditors v. PSS Steamship Co. (In re Prudential Lines, Inc.),* 107 B.R. 832, 841 (Bankr.S.D.N.Y.1989) (*dicta*), *aff'd,* 119 B.R. 430 (S.D.N.Y.1990), *aff'd,* 928 F.2d 565 (2d Cir.), *cert. denied,* 502 U.S. 821, 112 S.Ct. 82, 116 L.Ed.2d 55 (1991). As a result, the debtor did not suffer any injury. Accordingly, the claims for breach of fiduciary duty and unjust enrichment based upon the worthless stock and bad debt deductions fail to state claims upon which relief can be granted.

## 2. The Tax–Related Avoidance Claims

The trustee's complaint asserts that using the debtor's NOLs and taking the worthless stock deduction also resulted in intentional and fraudulent transfer of the debtor's property. The defendants have moved to dismiss these avoidance claims as well as the non-tax avoidance claims under Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure. Because the tax-related avoidance claims fail to state claims under Rule 12(b)(6), they are dismissed without consideration of the Rule 9(b) argument.

The Bankruptcy Code permits a debtor to avoid certain transfers so that property may be returned to the estate and distributed more equitably to creditors. "[I]f the debtor transfers property that would not have been available for distribution to his creditors in a bankruptcy proceeding, the policy behind the avoidance power is not implicated." *Begier v. Internal Revenue Serv.,* 496 U.S. 53, 58, 110 S.Ct. 2258, 110 L.Ed.2d 46 (1990). This is consistent with the longstanding rule that a creditor cannot recover transferred property if the property could not have been used to satisfy the creditor's claim. *See, e.g., Bryce v. National City Bank,* 93 F.2d 300, 302 (2d Cir.1937); *Willcox v. Goess,* 22 F.Supp. 841, 843 (S.D.N.Y.1938); *Newfield v.*

*Ettlinger,* 22 Misc.2d 769, 194 N.Y.S.2d 670, 678 (Sup.Ct.1959); *Prudential Sav. Bank v. Grant,* 99 N.Y.S.2d 602, 603 (Sup.Ct.1950).

■ As discussed, the NOLs were valueless to the estate. The complaint does not allege that the debtor had prior income or expected future income, and could have used the NOLs to enhance the estate for the benefit of the creditors. Thus, even if the complaint properly alleges the other elements of a fraudulent transfer, the complaint does not allege that the NOLs had value to the debtor. Consequently, no claim will lie for their transfer.[11]

■ The fraudulent transfer claim based upon the worthless stock deduction also lacks merit. The trustee alleges that the worthless stock deduction was the equivalent of transfer of the debtor's property having an approximate value of $1.1 million. If this refers to the collateral effect of reducing the NOL carryover to zero, the reduction still failed to diminish the estate or deprive the creditors of anything. The debtor's NOL carryover was valueless. If it refers to the value of the worthless stock deduction to the estate and the creditors, it makes no sense because the worthless stock deduction belonged to Leslie. Consequently, these fraudulent transfer allegations also fail to state legally cognizable claims.

## 3. The Non–Tax Avoidance Claims

The defendants also seek to dismiss the fraudulent transfer claims pertaining to the non-tax transfers. Because these transfers actually depleted the estate, the motion to dismiss raises issues that did not have to be considered in connection with the tax-related claims. For the reasons that follow, the Court concludes that the intentional fraudulent transfer claims fail to satisfy Rule 9(b). The constructive fraudulent transfer claims, on the other hand, are properly pleaded and legally sufficient.

---

11. The same reasoning requires the dismissal of the tax-related preference claims asserted under 11 U.S.C. § 547 in the fifth claim for relief.

### a. Rule 9(b)

Rule 9(b) of the Federal Rules of Civil Procedure imposes special requirements for pleading fraud. It states:

> In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

Made applicable to this adversary proceedings by Federal Bankruptcy Rule 7009, Rule 9(b) is designed to provide a defendant with fair notice of the plaintiff's claim, safeguard the defendant's reputation from improvident charges of wrongdoing and protect against strike suits. *Campaniello Imports, Ltd. v. Saporiti Italia S.p.A.*, 117 F.3d 655, 663 (2d Cir.1997); *O'Brien v. National Property Analysts Partners*, 936 F.2d 674, 676 (2d Cir. 1991); *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir.1987); *Segal v. Gordon*, 467 F.2d 602, 607 (2d Cir. 1972). Although *scienter* may be pleaded generally, the pleader must still "allege facts that give rise to a strong inference of fraudulent intent." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir.1994); *accord Campaniello Imports, Ltd. v. Saporiti Italia S.p.A.*, 117 F.3d at 663; *Chill v. General Elec. Co.*, 101 F.3d 263, 267 (2d Cir.1996). A strong inference of fraudulent intent may be established in one of two ways: "either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d at 1128; *accord Chill v. General Elec. Co.*, 101 F.3d at 267.

Ordinarily, a pleader cannot allege fraud based upon information and belief unless the facts are "peculiarly within the opposing party's knowledge." *Schlick v. Penn-Dixie Cement Corp.*, 507 F.2d 374, 379 (2d Cir.1974), *cert. denied*, 421 U.S. 976, 95 S.Ct. 1976, 44 L.Ed.2d 467 (1975); *accord Campaniello Imports, Ltd. v. Saporiti Italia S.p.A.*, 117 F.3d at 664. Even in those cases, the pleader must allege facts upon which the belief is founded. *Campaniello Imports,* *Ltd. v. Saporiti Italia S.p.A.*, 117 F.3d at 664; *Schlick v. Penn-Dixie Cement Corp.*, 507 F.2d 374, 379 (2d Cir.1974), *cert. denied*, 421 U.S. 976, 95 S.Ct. 1976, 44 L.Ed.2d 467 (1975); *Segal v. Gordon*, 467 F.2d at 608. Since a bankruptcy trustee rarely has personal knowledge of the events preceding his appointment, he can plead *scienter* based upon information and belief provided he pleads the basis of his belief. *See Devaney v. Chester*, 813 F.2d 566, 569 (2d Cir.1987); *Davidson v. Twin City Bank (In re Hollis & Co.)*, 83 B.R. 588, 590 (Bankr.E.D.Ark.1988); *Hassett v. Weissman (In re O.P.M. Leasing Servs., Inc.)*, 35 B.R. 854, 862–63 (Bankr. S.D.N.Y.1983), *rev'd on other grounds*, 48 B.R. 824 (S.D.N.Y.1985); *Hassett v. Zimmerman (In re O.P.M. Leasing Servs., Inc.)*, 32 B.R. 199, 202 (Bankr.S.D.N.Y.1983).

It is well-settled that the Rule 9(b) pleading requirements apply to claims of intentional fraudulent transfer. *See Atlanta Shipping Corp. v. Chemical Bank*, 818 F.2d 240, 251 (2d Cir.1987) (allegations of actual fraudulent intent under N.Y. Debtor & Creditor Law § 276 must plead the requisite mental intent with particularity). Its application to claims sounding in constructive fraudulent transfer is less settled. Some courts have held that Rule 9(b) does not apply because *scienter* is not an element, and because the claim is actually based upon the effect of the transfer on creditors and not on any type of fraud. *E.g., China Resource Prods. (U.S.A.), Ltd. v. Fayda Int'l, Inc.*, 788 F.Supp. 815, 819 (D.Del.1992); *Hassett v. Weissman*, 35 B.R. at 863; *cf. Allegaert v. Perot*, 78 F.R.D. 427, 430–31 (S.D.N.Y.1978) (questioning the applicability of Rule 9(b)). Others observe that while *scienter* and misrepresentation are not elements, Rule 9(b)'s particularity requirements still apply to the elements of a constructive fraud claim. *See, e.g., General Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1079 (7th Cir.1997); *Victor v. Riklis*, No. 91 Civ. 2897, 1992 WL 122911, at *5 n. 6 (S.D.N.Y. May 15, 1992).

The first approach rests on firmer legal ground. Although tagged with the title "fraudulent," fraud has nothing to do

with the constructive fraudulent transfer claim. The transaction is based on the transferor's financial condition and the sufficiency of the consideration provided by the transferee. *Harrison v. Entertainment Equities, Inc. (In re Rave Communications, Inc.)*, 138 B.R. 390, 395 (Bankr.S.D.N.Y.1992). Rule 9(b) must be read in harmony with Rule 8(a), and a court must consider the purposes of Rule 9(b) to determine whether a pleading is sufficient. *Wieboldt Stores, Inc. v. Schottenstein*, 94 B.R. 488, 498 (N.D.Ill.1988); *In re Rave Communications, Inc.*, 138 B.R. at 394. Concerns over the defendant's reputation or strike suits have little place, and the sole consideration should be whether, consistent with the requirements of Rule 8(a), the complaint gives the defendant sufficient notice to prepare an answer, frame discovery and defend against the charges. *See General Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d at 1080; *Hassett v. Weissman*, 35 B.R. at 861.

### b. The Intentional Fraudulent Transfer Claims

■ The trustee contends that the non-tax transfers were intentionally fraudulent under New York state law.[12] The complaint, however, merely alleges in summary fashion that the actions complained of were actually fraudulent, intended to defraud, hinder and delay the debtor's creditors, or were fraudulent under New York law. (*See, e.g.*, Complaint ¶¶ 22–23 (second claim); 30–32 (third claim); 38–39 (fourth claim)). Merely quoting or paraphrasing the statutory language, as the complaint does, fails to satisfy the particularity requirements of Rule 9(b). *In re Hart*, 461 F.Supp. 328, 329–30 (E.D.Ark. 1978); *Hassett v. Zimmerman*, 32 B.R. at 204. The allegation that Leslie and Drew used the debtor's property to reduce the outstanding indebtedness—the gravamen of the second and third claims—does not, without more, give rise to a strong inference that they intended to defraud the debtor's credi-

tors. Similarly, the allegations in the fourth claim that Drew received management fees but did not render appreciable services in return does not support a strong inference of fraudulent intent. The complaint does not even allege that Drew never intended to render any management services, although this does not imply that such allegations in the complaint would require a different result.

### c. The Constructive Fraudulent Transfer Claims

■ The complaint also alleges that the non-tax transfers were constructively fraudulent. New York's constructive fraudulent transfer provisions are set out over several sections. *See* N.Y. Debt. & Cred. L. §§ 273–275 (McKinney 1990) ("DCL"). Each provision consists of three elements: (1) a transfer (2) for less than fair consideration (3) at a time when the debtor suffered from an adverse financial condition. The latter includes insolvency (§ 273), the inability to satisfy a judgment rendered in a money damage action that was pending at the time of the transfer (§ 273–a), unreasonably small capital to engage in business or transaction (§ 274), and an intent or belief that the transferor will incur debts beyond its ability to pay as they mature (§ 275).

The second, third and fourth causes of action allege facts supporting each of these elements. The second and third claims allege diversion of the debtor's property, or the proceeds of the debtor's property, to Leslie and Drew. The fourth claim avers that the debtor paid management fees to Drew. These transactions satisfy the broad definition of transfer contained in the Bankruptcy Code, *see* 11 U.S.C. § 101(54),[13] and incorporated into 11 U.S.C. § 544(b).

The complaint also pleads the requisite financial condition. The second claim alleges that the debtor was insolvent at the time of

---

12. Section 276 of the New York Debtor & Creditor law states that every conveyance made or obligation incurred with actual intent to "hinder, delay, or defraud" creditors is fraudulent. *See* N.Y. Debt. & Cred. L § 276 (McKinney 1990).

13. Under section 101(54), " 'transfer' means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest and foreclosure of the debtor's equity of redemption."

the transfers, (Complaint ¶¶ 16–18), that the transfers left the debtor with unreasonably small capital in light of its uninsured liability to personal injury claimants and third parties seeking indemnification, (*id.* at ¶ 19), and that at the time of each transfer, the debtor was a defendant in a lawsuit, suffered a judgment and could not satisfy it. (*Id.* at ¶ 20.) The third and fourth claims expressly incorporate these allegations, (*id.* at ¶¶ 24, 33), and also repeat many of them. (*See id.* at ¶¶ 25–26, 28, 29 (third claim); 34 (fourth claim).) Although the allegation of insolvency is somewhat conclusory, the term is defined under the Debtor & Creditor law. *See* DCL § 271.[14] Hence, the allegation incorporates the definition and places flesh on the bare statement.[15]

Finally, the complaint adequately pleads lack of fair consideration. To be fair, the consideration must have a value fairly equivalent to what the transferor gave, and be conveyed in good faith. *See* DCL § 272(a). The payment of an antecedent debt satisfies the value component, but does not necessarily meet the good faith requirement. In this regard, the law has carved out an exception for insider preferences. A transfer made by an insolvent debtor to an affiliate or insider in satisfaction of an antecedent debt lacks good faith and is constructively fraudulent. *Pashaian v. Eccelston Properties, Ltd.,* 88 F.3d 77, 85–86 and n. 6 (2d Cir.1996); *see HBE Leasing Corp. v. Frank,* 48 F.3d 623, 634–35 (2d Cir.1995); *Atlanta Shipping Corp. v. Chemical Bank,* 818 F.2d at 249; *In re Checkmate Stereo & Elecs., Ltd.,* 9 B.R. 585, 617 (Bankr.E.D.N.Y. 1981); *aff'd,* 21 B.R. 402 (E.D.N.Y.1982); *Southern Indus., Inc. v. Jeremias,* 66 A.D.2d 178, 411 N.Y.S.2d 945, 950 (1978). Directors of an insolvent corporation are trustees for the benefit of all creditors, and it would be unfair and inequitable to permit insiders to pay their own debts while the corporation's assets are insufficient to satisfy the other

creditors. *Farm Stores, Inc. v. School Feeding Corp.,* 102 A.D.2d 249, 477 N.Y.S.2d 374, 378 (1984), *aff'd,* 64 N.Y.2d 1065, 489 N.Y.S.2d 877, 479 N.E.2d 222 (1985); *Southern Indus., Inc. v. Jeremias,* 411 N.Y.S.2d at 950.

The second and third claims allege that the debtor's property was used to pay existing obligations to Leslie and Drew, affiliates of the debtor. These set forth claims of insider preferences and satisfy the remaining element of a constructive fraudulent transfer claim. The fourth claim charges that the debtor paid management fees to Drew, but did not receive "appreciable services" in return. (Complaint ¶ 35.) The substance of the claim is that the debtor did not receive a fair equivalent for its management fees. Moreover, if the payment to an insider on account of past due management fees lacks fair consideration, *see Farm Stores, Inc. v. School Feeding Corp.,* 477 N.Y.S.2d at 378, *a fortiori,* the payment to an insider for services that it never rendered lacks fair consideration. Accordingly, the second, third and fourth claims in the complaint state legally sufficient claims sounding in constructive fraudulent transfer.

### D. Leave to Replead

In the final portion of his memorandum, the trustee asks leave to replead should the court find any "technical pleading deficiency in the Complaint." (*Plaintiff's Memorandum of Law in Opposition to the Defendants' Motion to Dismiss Portions of the Adversary Complaint,* dated Oct. 30, 1996, at 51.) In general, leave to amend should be freely granted, particularly where the dismissal is based on Rule 9(b), unless the amendment would be futile. *Chill v. General Elec. Co.,* 101 F.3d at 271–72; *Acito v. IMCERA Group, Inc.,* 47 F.3d 47, 55 (2d Cir.1995). Although I doubt that the trustee can plead legally sufficient claims involving

---

14. Section 271(1) states:

> A person is insolvent when the present fair salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured.

15. In fact, the parties dispute the timing but not the fact of the debtor's insolvency. The defendants contend that the debtor became insolvent on August 31, 1990. *In re White Metal Rolling & Stamping Corp.,* 217 B.R. at 982 n. 2. The trustee contends that the debtor was insolvent by August 31, 1989. *Id.*

the tax-related transactions, I am not prepared to conclude that any attempt to do so would be futile, at least without giving the trustee one more chance. In addition, the complaint suggests that the estate may have claims under the Tax Matters Agreement, and the trustee should be given the opportunity to present them. Hence, the trustee is granted leave to replead the dismissed claims as well as claims under the Tax Matters Agreement.

Settle order on notice.